N. H. Van Sicklen, Jr., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 55637. Promulgated November 26, 1935.

*Chas. R. Pollard, Esq.*, and *Harry A. Bernbach, C. P. A.*, for the petitioner.

*Paul D. Page, Jr., Esq.*, for the respondent.

OPINION.

MELLOTT: The first question to be decided in this proceeding is whether the $20,000 payment made to the petitioner in December 1928 was a gift, or a bonus or additional compensation.

The petitioner contends the evidence shows that the intention of A. B. Leach & Co. was to make a gift. In support of this contention he points out that at the time the payment was made, George T. Leach said it was a gift; that in the bookkeeping records and the resolution of January 7, 1929, the payment was denominated a gift; that the payment was charged to surplus and not to operating expenses; that the Leach Co. did not claim any deduction because of this payment in its income tax return for 1928; that the petitioner could not legally have demanded the delivery of the $20,000; and that the man who succeeded him in the position he filled was paid only $6,000 per annum. Respondent contends that the payment was additional compensation and should have been reported by the petitioner as income.

It is well settled that to constitute a gift there must be, not only a transfer of possession and an acceptance by the donee of the thing given, but an intention to make a gift. The transfer must also be without consideration or compensation therefor. See *Cora B. Beatty, Executrix*, 7 B. T. A. 726, and cases cited therein. "Whether a payment in a given case shall be deemed taxable compensation or a gift exempt from tax depends upon the intention of the parties, and particularly that of the employer, to be determined from the facts and circumstances surrounding the transaction." *Fisher* v. *Commissioner*, 59 Fed. (2d) 192. But—"The mere fact that the employer was under no legal duty to pay is not conclusive that the payment was a nontaxable gift." *Fisher* v. *Commissioner, supra*.

The fact that George T. Leach, vice president of the company, called the transaction a " gift " at the time that the check was delivered to petitioner, and that it was designated on the company's books and in the corporate resolution of January 7, 1929, as a " gift ", while persuasive, is not controlling. Tax liability is not determined by the mere use of words or even by book entries. We must analyze the whole transaction and look through the form to the substance. As said by the court in *Bass* v. *Hawley*, 62 Fed. (2d) 721, " In a case like this where neither corporation nor stockholder is the taxpayer, and motive and intent is the question, the substance of the matter should be looked to."

During the year in question the company made distributions aggregating $316,429.28, which was approximately 75 percent of its total

earnings. It designated such distributions on its return as "Christmas Bonus." These distributions were confined to employees and officers of the corporation, most of the employees receiving 50 percent of their salaries while the officers and more important employees, such as the petitioner, received larger percentages.

In *Noel* v. *Parrott*, 15 Fed. (2d) 669 (certiorari denied, 273 U. S. 754), the Circuit Court of Appeals for the Fourth Circuit said:

Although it is held that the motive accompanying a gift is not material, gifts usually proceed from the generosity of the giver; and, where there is any doubt as to the nature of the transaction, the absence of such motive is a pertinent circumstance for consideration. It is an essential characteristic of a gift, however, that it be a transfer without consideration.

\*　　\*　　\*　　\*　　\*　　\*　　\*

It needs neither argument nor citation of authority to establish the proposition that the directors were without authority to give away the corporate assets, and that for them to make to several of their members and other persons a gift of a large sum of money from the corporate assets would be neither "wise" nor "proper", and would amount to an illegal misapplication of corporate funds. We must assume that the directors did not intend such a flagrant violation of their trust.

But petitioner argues "that a friendship of long standing existed \* \* \* between George Leach and the petitioner, and \* \* \* had it not been for this long continuing friendship \* \* \* petitioner would never have received the gratuity in question." This argument is not persuasive. The payment in question was not made from George Leach's funds, but from the funds of A. B. Leach & Co. It is difficult to see what, if any, bearing individual friendships could have had upon the making of it. Surely it would not be contended that the vice president of the company would give away corporate funds in token of his friendship for petitioner.

Again, the record wholly fails to show that the corporation was motivated by pity, philanthropy or charity toward petitioner. Indeed, all of the evidence points to the contrary. Petitioner stated that he found that he "was apparently valuable in the investment banking business to A. B. Leach & Co." It was at this time that the company retroactively doubled his salary. Petitioner "was not particularly interested in the compensation" received as his "income was sufficient, in addition to that." He reported a total income of $177,352.50, exclusive of the $20,000 here in question. Manifestly, there was no need for pity, philanthrophy or charity. *Bass* v. *Hawley, supra.*

Regardless of the wording of the resolution of January 7, 1929, we seriously doubt that the Leach Co. gave away such a large part

of the corporate assets " without consideration." The fact that the amounts paid to most of its employees were measured by the salaries they received, strongly indicates that the payments were in consideration of past services. Petitioner's services were considered to be of great value to the corporation. This is shown by its action in doubling his salary to induce him to continue in its employ when he received an offer from another firm; and this undoubtedly explains why he received a larger percentage of his salary than was paid to other employees.

The repeated reference to the payment as a " gift " does not make it one. We are convinced that it was a bonus, or additional compensation for services rendered. A bonus " is not a gift or gratuity but a sum paid for services, or upon a consideration in addition to or in excess of that which would ordinarily be given." *Kennicott* v. *Wayne County*, 16 Wall. 452, 471. "Something given in addition to what is ordinarily received by or strictly due to the recipient; money given in addition to an agreed compensation." Webster's International Dictionary. "That only is a gift which is purely such, not intended as a return of value or made because of any intent to repay another what is his due, but bestowed only because of personal affection or regard or pity, or from general motives of philanthropy or charity." *Bass* v. *Hawley, supra.*

The fact that the payment was charged to surplus rather than to income, is not controlling. "It is not true that because a payment may not have been taken as a deduction by the payer that it cannot be taxed as income to the recipient." *Bass* v. *Hawley, supra.* In this connection, it is significant that the corporation, without deducting the $316,000 paid to officers and employees, could still show a loss in filing its tax return.

Petitioner relies upon *David R. Daly, Estate*, 3 B. T. A. 1042; *Richard L. McCann, Administrator*, 30 B. T. A. 102, and other court and Board cases. In the *McCann* case we had before us the question whether the transfer of certain property by a man to his wife constituted a gift or a trust. No such question is before us in this case. While the *David R. Daly* decision is in point, it should be noted that since it was promulgated, we have been given for our guidance such cases as *Fisher* v. *Commissioner, supra; Bass* v. *Hawley, supra; Noel* v. *Parrott, supra*, and *Schumacher* v. *United States*, 74 Ct. Cls. 720; 55 Fed. (2d) 1007. These decisions indicate that the provision exempting gifts being, as it is, " almost in verbal conflict with the broad provision that gross income shall include ' gains or profits and income derived from any source whatever ' " (Paul & Mertens " Law of Federal Income Taxation ", vol. 1, p. 147), should not be construed liber-

ally in favor of one claiming the exemption, but in such a way as to give the broad provision its proper effect.

The language used by the court in *Noel* v. *Parrott, supra*, might well be used here: " To call such a transaction a gift would do violence to the well-understood meaning of that word; and to hold that gains and profits realized in this manner are not subject to taxation as income would open the door to the grossest evasions of the law." In our opinion the respondent did not err in including the payment in petitioner's income for 1928.

The three issues relating to traveling expenses, money expended for clubs, and amounts expended in entertaining customers, may be considered together. Petitioner had the burden of proof, and it was incumbent upon him to establish by evidence his right to deduct the items in question. The testimony offered in this connection was very meager and vague.

With reference to the clubs, he stated that he expended " between $6,000 and $7,000 " and estimated that 90 percent of it was for business. He belonged to most, or all of the clubs, prior to his employment by A. B. Leach & Co. Some of them were golf clubs, while some were clubs at which he lived when in' the city. He stated that he could not segregate the amounts expended while alone, from the amounts expended while entertaining customers.

As to the traveling expenses, the evidence is as follows:

Q. Who paid your traveling expenses?
A. I paid almost all of my traveling expenses. Some incidental items directly chargeable to the job that I was on, were paid by Leach.

The above is the sole testimony introduced on this issue. We can not ascertain from it whether the Commissioner erred or not in refusing to allow $508.05 of the amount of $4,942.46 deducted by petitioner.

There was no testimony whatever upon the item of " expense of entertaining customers ", except petitioner's statement that he entertained customers. No names of customers, dates, amounts expended, or other substantial evidence was submitted. Under cross-examination he stated that he could not segregate the amounts so expended from his own personal expense.

Petitioner, therefore, has wholly failed to submit sufficient evidence to show that he is entitled to deduct the sums in question from his gross income.

It follows that respondent's determination of the deficiency should stand.

Reviewed by the Board.

*Judgment will be entered for the respondent.*