CHARLES SCHALL AND DAISY B. SCHALL, HIS WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13665. Promulgated July 30, 1948.

*Douglas D. Felix, Esq.*, for the petitioners.
*Newman A. Townsend, Jr., Esq.*, for the respondent.

### OPINION.

LEECH, *Judge*: The only question involved in this proceeding is whether the $2,000 received by the petitioner, Dr. Charles Schall, in the taxable year 1943 from the Wayne Presbyterian Church was a "gift," and therefore to be excluded from gross income under section 22 (b) (3) of the Internal Revenue Code, as petitioners contend, or was within the purview of the terms "salaries, wages, or compensation for personal service," and therefore to be included in gross income under section 22 (a), as respondent determined and here argues. Petitioners, of course, have the burden of establishing error in that determination of respondent. Have petitioners discharged that burden? After careful consideration of the present record, we can reach only one reasonable conclusion. They have not met that burden.

Respondent's position is that the payment was salary or compensation for past services. It is conceded that, if this is so, the item is income and not a gift.

The fact that regard, gratitude, or appreciation prompted the payment is not controlling. Whether it was a gift or compensation for past services depends not on the absence or presence of consideration, but on the intent of the parties—particularly the payor. *Bogardus* v. *Commissioner*, 302 U. S. 34; *Poorman* v. *Commissioner*, 131 Fed. (2d) 946; *Willkie* v. *Commissioner*, 127 Fed. (2d) 953. And, in determining this question of intent, although the resolution authorizing the payment in question is highly important, all the surrounding circumstances are relevant. *Bogardus* v. *Commissioner*, *supra.*

What were the circumstances as revealed in this record? Petitioner had been employed for about 18 years by this church at an annual salary of $6,000 plus the free use of the church manse for a home for petitioners, and the regular pension, which amounted in this case to about $600 per year. The preamble to the resolution authorizing the payment in dispute after his resignation affirms the "affectionate regard" for their pastor, Dr. Schall. It expressed their "gratitude for his long and valued ministry among them." Yet, despite these emphatic declarations of the value of his long ministry among them, there had been no increase in his salary or the physical emoluments of his pastorate during that 18-year period. True, there had been gifts to him and his wife—although mostly for distribution to others—but no increased salary. At the end of this 18-year period petitioner was compelled to retire because of a serious heart condition. His physician prescribed complete rest in Florida, where he could escape the rigors of a Pennsylvania winter. He and his wife were financially unable to do this. The congregation knew these facts. Is it unreasonable to assume that his congregation, just then realizing the tragedy of the situation and their possible oversight of his salary during the productive period of the petitioner's life which he had spent laboring with them, commendably decided that they must now correct the situation and make up that salary deficiency? So they elected him Pastor Emeritus, "with no pastoral authority or duty," and committed themselves to pay him the annual payment in controversy. The petitioner treated the payments as "salary" or "compensation" on his income tax returns for each year they were received prior to and including the taxable year and, what is more important, there is nothing in this record to show that the church, the payor, treated the payments of this item, including those for the taxable year, any differently on their books. Cf. *Willkie* v. *Commissioner*, *supra.* Nor is there any evidence, outside the resolution itself, of the intent of the payor. Cf. *Bogardus* v. *Commissioner*, *supra.* How does that resolution characterize the payment in question? It described it as "salary or honorarium." Whatever varied meanings the latter term may be said to have, the meaning of the word "salary" is

the antithesis of that conveyed by the word "gift." The very provisions of the Internal Revenue Code which are controlling here [1] highlight this pointed contradiction. Thus, when the word "honorarium" is used as here in juxtaposition with the term "salary" rather than "gift," as was done in *Bogardus   Commissioner, supra,* and the word "salary" appears first, it is scar ly reasonable to assume that the authors of this obviously carefully 'rawn resolution would have used a word following "salary" which w uld have so completely contradicted its meaning. See *Bogardus v. Commissioner, supra.* This case is also distinguishable from the *Bogardus* case, upon which petitioners largely rely, just as was the situation in *W illkie v. Commissioner, supra,* where the Court said:

Petitioner relies strongly on *Bogardus* v. *Commissioner of Internal Revenue,* supra [302 U. S. 34, 58 S. Ct. 65, 82 L. Ed. 32], where the court held that payments made to present and former employees of a corporation by its former stockholders, acting through a new corporation which had taken over the property of the old, were gifts. The premise for the decision was that no connection existed between the old corporation or the recipient of gifts on the one hand and the makers of the gifts and their new corporation on the other. In the opinion, after reciting the facts, the court said:

"If the disbursements had been made by the Universal Company, or by stockholders of that company still interested in its success and in the maintenance of the good will or loyalty of its employees, there might be ground for the inference they were payments of additional compensation. Compare *Noel* v. *Parrott* [4 Cir.], 115 F. 2d 669. * * * There is entirely lacking the constraining force of any moral or legal duty as well as the incentive of anticipated benefit of any kind beyond the satisfaction which flows from the performance of a generous act."

Here, there was a moral duty on the part of the church, and its recognition by the church is, at least, not contradicted. The commitment for the payment in dispute was made in fact by an employer to an employee at the conclusion of his service. It was made to that employee, who thereafter was "with no pastoral authority or duty." Without more than this record reveals, it may be doubted that the payment in controversy was intended to be or was anything other than compensation. *Cora B. Beatty, Executrix,* 7 B. T. A. 726. Certainly, as we have decided, the petitioners have failed to sustain their burden of showing error in the determination of the respondent.

*Decision will be entered for the respondent.*

---

[1] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal services. * * *

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

\* \* \* \* \* \* \*

(3) GIFTS, BEQUESTS AND DEVISES.—The value of property acquired by gift, bequest, devise, or inheritance * * * [but the income from such property shall be included in gross income].