ESTATE OF GRACE G. MCADOW, DORIS HUTSON, AND WYATT T. GARLOCK, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF RICHARD C. MCADOW, RICHARD C. MCADOW, JR., EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 15789, 15799. Promulgated March 7, 1949.

*John P. Ohl, Esq., Timothy J. Shea, Esq., George C. Blattmachr, Esq., Robert G. Stewart, Esq.,* and *M. Rudolph Preuss, Esq.,* for the petitioners.

*Conway N. Kitchen, Esq.,* for the respondent.

314

## OPINION.

BLACK, *Judge*: Amounts received as compensation for personal service are includible in gross income under section 22 (a) of the Internal Revenue Code. On the other hand, the value of property received by gift is specifically excluded from gross income by the provisions of section 22 (b) (3). There is thus squarely presented the question of whether the securities transferred to McAdow in 1941 by Henry R. Benjamin and Mrs. McEvoy were in payment for services rendered and, therefore, includible in income, or constituted gifts and, as such, were excludable from income.

It should be noted at the outset that the receipt of property such as McAdow received in the instant case can not be a gift and at the same time be taxable income. In *Bogardus* v. *Commissioner*, 302 U. S. 34, the Supreme Court said:

If the sum of money under consideration was a gift and not compensation it is exempt from taxation and cannot be made taxable by resort to any form

of subclassification. If it be in fact a gift, that is an end of the matter; and inquiry whether it is a gift of one sort or another is irrelevant. This is necessarily true, for since all gifts are made nontaxable, there can be no such thing under the statute as a taxable gift. * * *

In determining whether the value of the securities received by McAdow was a gift or compensation for services, the controlling test is the intention of the parties gathered from all the facts and circumstances surrounding the transaction, and particularly that of the transferors. *Bogardus* v. *Commissioner, supra; Poorman* v. *Commissioner,* 131 Fed. (2d) 946; *Willkie* v. *Commissioner,* 127 Fed. (2d) 953; certiorari denied, 317 U. S. 659; *Fisher* v. *Commissioner,* 59 Fed. (2d) 192; and *Charles Schall,* 11 T. C. 111. The treatment of the payment by the parties is, however, not alone controlling. As stated by the Supreme Court in *Bogardus* v. *Commissioner, supra:*

* * * A *claim* that it is a gift presents the sole and simple question whether its designation as such is genuine or fictitious; that is to say, whether, though *called* a gift, it is in *reality* compensation. * * *

Since the intention of the transferors may be gathered from expressed purposes or inferred from surrounding facts and circumstances, we turn to the facts for evidence of their intent. At the time the securities were delivered to McAdow there was delivered a note signed by the transferors which stated that it was "Our gift to R. C. McAdow * * * for an expression of love and affection over a period of twenty five years, for which no services were rendered or required." The transfer of the securities was entered upon the security ledger in the respective books of account of the transferors as a "Gift to R. C. M.," the initials referring to Richard C. McAdow. The transferors each filed a gift tax return for the year 1941, paying the gift tax thereon, in which there were included as a gift the securities transferred by each to McAdow in that year. In the return of Henry the nature of the transfer by him to McAdow was stated to be "for an old and true friendship of over 20 years." In the return of Beatrice the motive for the transfer by her was stated to be "love and affection for a true old friend of over 20 years." McAdow filed donee's information returns of gifts for the year 1941, in which the securities received from the transferors were reported as gifts. In addition thereto, Henry testified at the hearing that he and his sister Beatrice wanted to make a gift to McAdow and that they had discussed the matter beforehand and felt that it was a nice thing to do, since they knew that McAdow was upset and disappointed because he had not been named as an executor-trustee under their father's will. These acts, while not conclusive, are circumstances which convince us that the transferors intended to make McAdow a gift and not to pay him compensation for any past services.

Mrs. McEvoy did not testify at the hearing. It was stated by counsel that she was seriously ill in the hospital and on that account was unable to be present and testify.

The respondent, in contending that the value of the securities constituted compensation for personal services, argues that McAdow was in a position to render personal services and that he actually rendered such services and received the securities as compensation therefor. Respondent points out, as evidence of the fact that McAdow rendered services to Henry R. Benjamin, that Henry's father, William E. Benjamin, in 1939 was 80 years old and was possessed of a large estate; that various persons sought to influence William E. Benjamin to turn over the management of his property to them and to induce him to make large gifts and to revise his will; that McAdow cooperated with Henry in resisting these attempts, which constituted the rendition of personal services of McAdow to Henry; and that Henry testified that William E. Benjamin "got a little disgruntled with McAdow and thought he was favoring my sister and myself," which indicates that McAdow rendered personal services to the transferors because he was "favoring" them. Respondent argues that because of such services McAdow was removed as manager of William E. Benjamin's affairs and was removed as an executor-trustee of his will, depriving McAdow of a substantial executor's fee, and that, in order to make up for such loss after William E. Benjamin's death in 1940 and to compensate McAdow for such "favors," the transferors transferred to McAdow the securities involved herein. Respondent also points out that McAdow had endeavored to straighten out injustices which he believed were being done to the transferors by their father; that McAdow had acted as peacemaker in connection with friction which sometimes arose between William E. Benjamin and the transferors; and that he took care of certain personal matters for Beatrice, such as preparing her income tax returns, obtaining her passports, and in general endeavoring to act in her interests.

It is apparent to us that the above services which respondent maintains were rendered to the transferors were mainly incidental to McAdow's employment by William E. Benjamin. The facts show that McAdow was employed by the father of the transferors for many years and by certain corporations in which the Benjamin family was interested, and that he acted as trustee of certain trusts for the benefit of members of the Benjamin family. He received his compensation from these sources. McAdow's position being what it was, it was only natural that he should endeavor to act in a manner which he thought was in the best interests not only of William E. Benjamin, but of other members of his family. The fact that McAdow cooperated with Henry in resisting the efforts of various persons to influence

William E. Benjamin in the disposition of his property and endeavored to protect the interests of William E. Benjamin's children and to promote harmony between William E. Benjamin and his children indicates that McAdow was endeavoring to act in the best interests of the Benjamin family as a whole and was not thereby rendering personal services to Henry R. Benjamin and his sister, Beatrice B. McEvoy. If the securities had been transferred by William E. Benjamin to McAdow there might be some ground for the inference that they were payments of additional compensation for personal services rendered to William E. Benjamin. *Bogardus* v. *Commissioner, supra.* The cases have pointed out that the payment of an additional sum by an employer to an employee carries a presumption that such payment is for services rendered. *Willkie* v. *Commissioner, supra; Van Dusen* v. *Commissioner*, 166 Fed. (2d) 647.

There can be no doubt that McAdow, as an employee of William E. Benjamin, did render services which greatly benefited the Benjamin family, including Henry R. Benjamin and Mrs. McEvoy, the transferors of the property here in question. These two undoubtedly felt deeply grateful to McAdow for what he had done, and that was the moving cause for their gifts to him, and it seems clear to us that in transferring to him the bonds which are involved in these proceedings they were not paying compensation to an old and faithful employee of theirs for past services. Cf. *Charles Schall, supra.* McAdow had never been an employee of Mrs. McEvoy. True he had at times looked after the preparation and filing of her income tax returns, securing passports, paying her automobile license fees, and other matters of that kind, but he was not her employee and did those favors as matters of courtesy and friendship. It is true that McAdow for several years was employed by Henry R. Benjamin to look after his brokerage account. Henry paid him for these services 10 per cent of the profits from the brokerage account. We do not think these services by McAdow to Henry in looking after his brokerage account had anything to do with the transfers of the bonds here in question. Henry testified at the hearings that he always paid McAdow his 10 per cent share of the profits from the brokerage account and that he considered this as full compensation for McAdow's services and so did McAdow, and that in making the transfers here in question he had no thought or intent of paying additional compensation to McAdow for his services as an employee in looking after his brokerage account. We have no reason to doubt the truth of this testimony. The winning of a decision by petitioners in these proceedings will certainly profit Henry R. Benjamin nothing, nor will it profit Mrs. McEvoy anything. The contrary would be true, for, if they made

McAdow no gift, they would have no gift tax to pay on account of their transfers to him and would doubtless be entitled to a refund of the gift taxes which they paid on account of their gifts to McAdow.

We think the reasons given by Henry R. Benjamin and Beatrice B. McEvoy in their gift tax returns for making the gifts have been established by a preponderance of the evidence. *Bogardus* v. *Commissioner, supra.* We conclude, therefore, that the securities were received by McAdow in 1941 as a gift, and not as compensation for services rendered.

*Decisions will be entered under Rule 50.*