Sydney B. Carragan v. Commissioner.
Carrag v. . Comm'n
Docket No. 24281.
United States Tax Court
1951 Tax Ct. Memo LEXIS 291; 10 T.C.M. (CCH) 259; T.C.M. (RIA) 51074; March 19, 1951
John G. Turnbull, Esq., 111 John St., New York 7, N. Y., for the petitioner. Stephen P. Cadden, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in the petitioner's income tax for the years 1943 and 1944 in the amounts of $7,343.94 and $597.89, respectively. The year 1942 is involved by reason of the forgiveness feature of the Current Tax Payment Act of 1943. There are two questions presented for our determination: First, *292 whether a payment of $19,200 which petitioner received in 1942 from his employer corporation whose assets were held by the Alien Property Custodian was compensation for services rendered, or was a gift; and second, whether $1,380 expended by petitioner in 1944 for living expenses in Philadelphia is deductible as a business expense. Findings of Fact The stipulated facts are incorporated herein by reference. The pertinent facts are as follows: Petitioner is an individual residing in New York. His return for 1943 and 1944 were filed with the collector of internal revenue for the first district of New York. The pertinent facts are as follows: The Takamine Corporation, hereinafter referred to as Takamine, was a New York corporation organized in 1923 to acquire an importing and exporting business previously transacted by predecessor companies. The petitioner had been employed by these predecessor companies from the years 1916 to 1923. He continued in the employment of Takamine until its liquidation in 1942. The stock of Takamine consisted of 1,600 shares of common no par value stock on December 7, 1941. One-half of the stock was owned by Eben T. Takamine, a Japanese national residing *293 in New York City, and the other half was owned by Sankyo Company, Limited, of Tokyo, Japan, a Japanese corporation. After December 7, 1941, all transactions involving Takamine were controlled by the Secretary of the Treasury of the United States upon recommendation of the Federal Reserve Bank of New York City. A custodian was installed on December 8, 1941, by the Federal Reserve Bank and under his direction the affairs of Takamine were rapidly liquidated. On May 20, 1942, the liquidation had been completed to the extent that all assets had been converted to cash except $10,000 face amount of Japanese bonds and some accounts receivable from Japanese debtors. At that time the board of directors of the corporation was still functioning subject to approval of their acts by the Secretary of the Treasury. On that date the board of directors held a meeting and adopted a resolution authorizing payment of severance allowance to regular employees. This resolution reads as follows: "WHEREAS, The liquidation of Takamine Corporation has been substantially completed; and "WHEREAS, In accordance with precedent, the directors deem it fitting and proper to recognize the length of time its officers *294 and employees have served the Corporation and the value of their services by granting to each, respectively, a severance allowance commensurate; "NOW, THEREFORE, be it "RESOLVED, That the following severance allowances be paid: "Sydney B. Carragan, in recognition of the faithful services rendered to the Corporation and its predecessors over a period of 26 years and for which services, the compensation received by Mr. Carragan has been entirely inadequate, the sum of $19,200. "Shukichi Masui, in recognition of the faithful services rendered to the Corporation and its predecessors over a period of 20 years, the sum of $3,500. "Torazo Nishio, in recognition of the efficient services rendered to the Corporation during the last 16 years, the sum of $2,500. "Katherine Rooney, in recognition of her loyal and conscientious work performed for the Corporation during the last 8 years, the sum of $1,500. "Florence Kupper, in recognition of her loyal services performed for the Corporation during the last 6 years, the sum of $650. "Icona Nation, in recognition of her loyal services performed for the Corporation during the last 5 years, the sum of $475. "John Gilmore, in recognition *295 of the meritorious work performed by him for the Corporation, particularly in connection with the liquidation of various of its assets, the sum of $100." On the same date application was made to the Secretary of the Treasury for permission to pay the severance allowances authorized by the above resolution. Attached to the application was a copy of the above resolution and also a statement as to the relationship to Takamine of each of the officers and employees to whom the proposed severance allowances were to be paid. As to petitioner, the statement reads as follows: "The severance allowances to be paid to each of the persons herein had been discussed with Mr. Eben T. Takamine, the holder of fifty percent of the capital stock of this Corporation, and such payments have his full approval. The balance of the capital stock of the Corporation is owned by Sankyo Company, Limited, of Tokyo, Japan, who has in times past, approved like severance allowances. "The facts that actuated the Board of Directors of Takamine Corporation in fixing the respective allowances in the amounts specified are as follows: "SYDNEY B. CARRAGAN is a native born American citizen. He has resided at 129 Wellington *296 Road, Garden City, New York, for twenty-two years last past. "Mr. Carragan was first employed by a predecessor of Takamine Corporation in 1915, and during the 26 years since that time he has served the Corporation and its predecessors continuously. During that period he has been in full charge of its foreign business, both export and import, with the exception of the toothbrush business. For the last five years he has been the chief operating executive of the Corporation. "Mr. Carragan obtained all of the agencies for export of goods to Japan which the Corporation had. Among such agencies were MAX MILLER, INC., NATIONAL CARBON COMPANY, ACHESON GRAPHITE COMPANY, and SHARPLESS CORPORATION. Many other less well known American companies also placed their Japanese business with Takamine Corporation through the efforts of Mr. Carragan. The development of business for those American companies was directed by him. He made trips to Japan in 1935 and 1937 and established and developed connections there which resulted in constantly expanding business down to the time that exports to Japan were restricted. All imports from Japan, except toothbrushes, were made under his direction and were *297 the result of orders he obtained from American concerns. "All of this business was profitable. In 1937 when Mr. Carragan assumed direction of the Corporation's affairs, its financial condition was bad. Under his leadership and because of his efforts, the financial condition of the Corporation steadily improved. Had not the war, and prior thereto, international complications intervened, the future of the Corporation would be very bright, indeed, and almost altogether through Mr. Carragan's efforts. "Mr. Carragan was first employed by Takamine Laboratory in 1915 after graduating from Yale University, Michigan Law School, and being admitted to the Bar of the State of New York. Two years later he entered the employ of the predecessors of Takamine Corporation, and joined Takamine Corporation when it was organized in 1923. He has received a very low salary at all times with the understanding that if he made the Corporation prosper, he would be rewarded with a substantial interest in it. His base salary has been $4800 a year since 1938, and prior thereto it was even less. Bonus payments for the last few years have averaged about $2,700 a year. "Because of the liquidation of the Corporation *298 it will be impossible for Mr. Carragan to secure the benefit of the work he has done. The amount the Corporation desires to pay Mr. Carragan, $19,200, has been approved by Eben T. Takamine, the holder of 50 per cent of the stock of the Company. The only other stockholder is Sankyo Company, Ltd., a Japanese national in Japan. The payment of a severance allowance in such amount is in line with the policy adopted by the Corporation at the time of retirement of T. Kusanobu a former general manager. At that time the stockholders of the Corporation were the same as they are now, but the Corporation was not in nearly as good financial condition. Mr. Kusanobu received a total severance benefit of approximately $18,700. His service to the Corporation measured by results achieved is not to be compared with the services rendered by Mr. Carragan. Mr. Kusanobu's length of service was also much shorter, being only 14 years. "Mr. Carragan has devoted 26 years to the work of Takamine Corporation and its predecessors. He has amply earned the severance allowance of $19,200." On June 10, 1942, the Federal Reserve Bank of New York approved the application and on June 12, 1942, the petitioner, along *299 with the other officers and employees, received payment of the severance allowances authorized by the resolution. During the year 1942 petitioner was vicepresident and treasurer, and a director of Takamine and the holder, under a voting trust agreement, of all the outstanding shares of its capital stock. He was the senior officer and manager of the corporation. His salary and bonus for each of the years of his employment and the profits and losses of Takamine, before payment of any bonus, were as follows: Earnings of Corporation
Before Payment of Bonus
Fiscal Year
Total
Ending
Salary
Bonus
Compensation
(Profit)
(Loss)
1923
$ 4,100
$ 4,100
1924
4,400
4,400
1925
4,600
4,600
1926
5,000
5,000
1927
4,877
$ 300
5,177
1928
4,800
200
5,000
1929
4,800
700
5,500
1930
5,400
250
5,650
$ 6,416
1931
5,400
75
5,475
7,770
1932
4,700
4,700
$20,620
1933
3,870
75
3,945
21,076
1934
$4,620
$ 400
$ 5,020
$ 8,497
1935
4,000
850
4,850
11,331
1936
4,200
600
4,800
9,892
1937
4,800
500
5,300
25,542
1938
4,800
2,042
6,842
18,273
1939
4,800
3,650
8,450
21,679
1940
4,800
5,550
10,350
32,434
1941
4,800
3,000
7,800
9,502
*300 On July 25, 1941, petitioner was chairman of a special meeting of stockholders where Eben T. Takamine, Tarazo Nishio, and Shukichi Masui, all Japanese nationals, resigned as directors of the corporation, and Katherine V. Rooney and John G. Turnbull were elected to succeed them. The petitioner was the other director of the corporation. On the same day petitioner presided as chairman of a special meeting of the board of directors, consisting of himself, Katherine V. Rooney and John G. Turnbull, at which Eben T. Takamine resigned as president and petitioner resigned as secretary. It was decided to leave the office of the president of the corporation vacant but petitioner was elected treasurer and John G. Turnbull was elected secretary. Since petitioner had previously been elected vice president of the corporation he continued as its senior officer. In December 1941 and during 1942 Sankyo Company, Limited, and Eben T. Takamine each owned one-half of the capital stock of Takamine. This stock was all held by the petitioner under a voting trust agreement dated October 26, 1940. The petitioner and other regular employees of Takamine continued in the employ of the corporation under *301 the control and supervision of the custodian until June 1, 1942. Takamine had no profits in 1942. The severance allowances paid in that year were not charged on the books of Takamine as additional salary or expense. Neither were they reported as gifts in any gift tax return filed by Takamine. Takamine was not legally obligated to pay petitioner any additional compensation in 1942. In April or May 1943 petitioner obtained employment with Sharples Corporation in Philadelphia, Pennsylvania. He was employed by that company in Philadelphia throughout the remainder of that year and the entire year 1944. At the time petitioner accepted this position with Sharples Corporation his home was in Garden City, New York, where he resided with his wife and daughter-in-law. A grandson was born in September 1944. Petitioner was unable to find satisfactory living quarters in Philadelphia and continued to maintain his family residence at Garden City. The offices of Sharples Corporation and petitioner's post of duty with the company were in Philadelphia. The company was engaged in war work and it was understood that petitioner's employment with it would terminate when the war was over. All of *302 petitioner's services to Sharples Corporation were rendered in Philadelphia. Petitioner rented a room in Philadelphia for which he paid $50 a month. The estimated cost of his meals there were $3 per day, or $780 for the 260 days spent in Philadelphia during the year 1944. Petitioner usually spent Saturday and Sunday with his family in Garden City, leaving Philadelphia Friday evening and returning Sunday evening of each week. In his income tax return for 1944 petitioner claimed as a business deduction the aforesaid items of living expense totaling $1,380. The respondent disallowed this deduction. Opinion LEMIRE, Judge: The respondent has determined that the $19,200 which petitioner received in 1942 as a severance allowance from Takamine is taxable to him as additional compensation, under section 22(a), Internal Revenue Code. Petitioner contends that it was a gift and therefore not includible in his taxable income. The question whether the payment was a gift or was additional compensation depends largely upon the intention of the parties who made the payment and on the presence or absence of consideration for the payment, such as would negate the gift. See *303 Michael Laurie, 12 T.C. 86. Because of its particular appropriateness here we quote the following excerpt from our opinion in the Michael Laurie case: "More specifically, it has been decided that, even if a payment were called a gift and treated as such by the parties, these factors in themselves would not be controlling, highly important as they might be; for intention must be gathered not only from the language used and bookkeeping entries, but from all the surrounding circumstances. Charles Schall, 11 T.C. 111; Fisher v. Commissioner, 59 Fed. (2d) 192. Furthermore, if services have been performed for the payer directly or for him indirectly, as where he reaps substantial benefits from them, it is ordinarily presumed that the amount received is for the services and is not a gift. Batterman v. Commissioner, 142 Fed. (2d) 448; certiorari denied, 322 U.S. 756; Nickelsburg v. Commissioner, 154 Fed. (2d) 70; Grace v. Commissioner, 166 Fed. (2d) 1022. Such presumption is particularly strong where the employer-employee relationship exists. Wilkie v. Commissioner, 127 Fed. (2d) 953; *304 certiorari denied, 317 U.S. 659; cf. Bogardus v. Commissioner, 302 U.S. 34. And this is not overcome merely by showing that the payments were not treated as expenses by the payor. N. H. Van Sicklen, Jr., 33 B.T.A. 544; Thomas v. Commissioner, 135 Fed. (2d) 378. The fact that the payments may have been voluntary ones, made without legal obligation on the part of the payor, is not of itself sufficient to characterize the receipts as gifts. See, e.g., Old Colony Trust Co. v. Commissioner, 279 U.S. 716; Noel v. Parrott, 15 Fed. (2d) 699; certiorari denied, 273 U.S. 754. Payments made in recognition of long and faithful service, George B. Lester, 19 B.T.A. 549; N. H. Van Sicklen, Jr., supra, or in anticipation of future benefits from the services of the payee, Davis v. Commissioner, 81 Fed. (2d) 137, or for the maintenance of his continuing loyalty as an employee, see Bogardus v. Commissioner, supra, have been generally regarded as taxable compensation and not as tax-free gifts." The payment in question was referred to in the formal resolution *305 authorizing it as a "severance allowance" commensurate with the length of time and the value of petitioner's services to the company. The application filed with the custodian for permission to make the payment also referred to it as a "severance allowance," and, after outlining the history and nature of petitioner's services with the company, stated that: "* * * He has received a very low salary at all times with the understanding that if he made the Corporation prosper, he would be rewarded with a substantial interest in it. His base salary has been $4800 a year since 1938, and prior thereto it was even less. Bonus payments for the last few years have averaged about $2,700 a year. * * *
"Mr. Carragan has devoted 26 years to the work of Takamine Corporation and its predecessors. He has amply earned the severance allowance of $19,200." Nowhere in the resolution or in the representations to the custodian is there any mention of a gift or anything that would suggest that a gift as distinguished from compensation was intended. The strongest if not the only support for petitioner's case is found in the testimony of Eben T. Takamine that he regarded the payment as a gift in *306 keeping with what he referred to as an old Japanese custom of paying "tear money" to an employee upon termination of his long and faithful services. The petitioner testified that he also regarded the payment as a gift. He and Eben T. Takamine had been close personal friends for a long time and had discussed the matter of the severance payments. There may be said to be an element of gift, in the ordinary sense of the term, in every payment made to an employee beyond what is required by agreement or prompted by a moral obligation. However, in a legal sense, and especially in regard to the income tax laws, a distinction must be drawn between gifts and remunerations in any form. Bogardus v. Commissioner, supra. For all the evidence shows the payment to the petitioner, even though "tear money" according to the Japanese concept, was nothing more than what is commonly referred to as "severance pay" in recognition of long and faithful services. See George B. Lester, 19 B.T.A. 549; N. H. Van Sicklen, Jr., 33 B.T.A. 544; and Michael Laurie, supra. In his brief, the respondent argues with considerable force that under the Trading With *307 The Enemy Act of 1917, which governed the distribution of funds of Takamine after December 8, 1941, and when the payment in question was made, no gift of Takamine's funds could lawfully have been made to anyone and that the payments to petitioner and the other employees could have been made only as "claims for services rendered." He cites section 34(a)(b) of the Trading With The Enemy Act of 1917, as amended, 50 U.S.C.A., § 34 (War Appendix). Respondent further points out that these payments were approved, and could have been approved, by the custodian only because they were represented in the application which the officers of the company filed as compensation for services previously rendered. In any event, we think that the evidence fails to establish that the payment of the amount in question to the petitioner was a gift rather than compensation for services. The remaining question for our consideration is whether the $1,380 claimed by petitioner in his 1944 income tax return as a business expense is deductible. The facts are that early in 1943 the petitioner accepted employment in Philadelphia for the duration of the war. The offices of the company *308 employing petitioner were in Philadelphia, his post of duty with the company was at that place and all his services to the company were rendered there. Being unable to find suitable living quarters for his family in Philadelphia, petitioner continued to maintain his home at Garden City, New York, and spent most of his week ends there. He rented a room in Philadelphia for himself at a cost of $50 per month. He paid an estimated $3 a day for meals for a total of 260 days spent in Philadelphia during the year 1944. Numerous cases involving facts substantially the same as are here involved have been before this Court and we have uniformly held that such expenses were personal living expenses and not deductible business expense. Commissioner v. Flowers, 326 U.S. 465; George F. Thompson, 6 T.C. 285, affirmed per curiam, 161 Fed. (2d) 185; John D. Johnson, 8 T.C. 303; and Leon Falk, Jr., 15 T.C. 49. On authority of these cases the respondent's disallowance of this deduction is sustained. Decision will be entered under Rule 50.