Andrew Mutch v. Commissioner.
Mutch v. Commissioner
Docket No. 35703.
United States Tax Court
1953 Tax Ct. Memo LEXIS 206; 12 T.C.M. (CCH) 705; T.C.M. (RIA) 53217; June 19, 1953
*206 Frederick E. S. Morrison, Esq., for the petitioner. Charles J. Hickey, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion Respondent determined a deficiency in petitioner's income tax for 1947 in the amount of $73.26. Petitioner does not contest the adjustments on which the deficiency is based, but claims an overpayment in the amount of $469.90 as a result of his erroneous inclusion in gross income of the sum of $2,040. The single issue presented, therefore, is whether the monthly payments in the total amount of $2,040, received by petitioner during 1947 from the Bryn Mawr Presbyterian Church, constituted a gift or was taxable as income. Part of the facts are stipulated and are found accordingly. Findings of Fact Petitioner, an ordained minister of the Presbyterian Church, resided in Wynnewood, Montgomery County, Pennsylvania. He filed his income tax return for 1947 with the collector of internal revenue for the first district of Pennsylvania, at Philadelphia. In May 1912 petitioner was appointed pastor of the Bryn Mawr Presbyterian Church, Bryn Mawr, Pennsylvania, at an agreed salary of $6,000 annually, together with the free use of *207 the church manse as a residence. He served continually in that capacity until the effective date of his resignation on June 15, 1936. His initial salary was increased to $7,200 on October 1, 1918, to $7,500 on April 1, 1921, to $9,000 on December 1, 1921, and to $10,000 on April 1, 1929. On April 1, 1933, at his own suggestion, petitioner's salary was reduced to $8,500 per year, which continued until September 30, 1936. From 1927 to 1935, inclusive, the Bryn Mawr Presbyterian Church contributed to the Board of Pensions of the Presbyterian Church seven and one-half per cent of petitioner's annual salary and petitioner contributed two and one-half per cent. This pension, amounting to $1,206 a year, was paid to petitioner in 1935 when he reached the age of 65 years, and has been paid to him each year since that date. During his pastorate petitioner and his wife received on their twenty-fifth wedding anniversary a gift of silver tableware and the sum of $1,000. On another occasion petitioner received a gift of $1,000 to aid him in paying certain outstanding hospital and medical expenses. On his retirement individual members of his congregation contributed $8,000 as a gift to be used *208 toward the purchase of a home for petitioner. The governing body of the Bryn Mawr Church for spiritual matters is known as the Session. The governing board of the church for financial matters is known as the Board of Trustees. At the time of petitioner's impending retirement in the spring of 1936 petitioner informally discussed his financial condition with members of the Session. At that time petitioner outlined that his pension amounted to $1,206 annually and that he had private capital of approximately $55,000 from which he realized income of about $3,000 annually. The Session was somewhat concerned whether petitioner would be able to live in a manner befitting a Pastor Emeritus of the Bryn Mawr Church. Accordingly, they recommended to the Board of Trustees that an honorarium be paid petitioner. On April 29, 1936, petitioner submitted the following letter of resignation: "To the Members of the Bryn Mawr Presbyterian Church." "My dearly beloved friends: "For reasons that are already well known to you all, the decision has been forced upon me that I should resign from Church service in pastoral charge and responsibility. This decision has been reached not only that my own *209 life may be continued for some more years, but also that the life and work of this Church and congregation may be carried on in the way that only a pastor in good health can accomplish. I ask you, therefore, at this meeting of the congregation duly called, to unite with me in requesting the Presbytery of Philadelphia-North at its meeting on May 12, to dissolve the pastoral relations between this Congregation and myself, to take effect in the middle of June. "As I regretfully make this request, I cannot but recall all that you have been to my family and myself since we came amongst you. Indeed these twenty-four years of life and ministry here have been a great privilege and the crowning experience of my life - because of the large and ever-increasing Christian fellowship, a wealth of valued friendships, the loyal cooperation of Session, Trustee and Congregation in all that pertained to the work and welfare of this Church. And I wish to renew at this time my thanks to you for what all this has meant to me through these years when we have lived together in Christian fellowship and worked together for Christ and His Cause. "In demitting this charge, with its wonderful opportunities *210 of ministry, I pray for each one of you the guidance and blessing of God, and trust you will carry on together in fine Christian spirit and purpose, and make this Bryn Mawr Church a still greater influence and power in the cause of the Gospel of Christ. "The Lord bless you and keep you always. "Yours very affectionately and most gratefully, "/s/ ANDREW MUTCH" This resignation was accepted and made effective as of June 15, 1936. On May 19, 1936, the Board of Trustees adopted the following resolution: "RESOLVED, that the present salary, use of the Manse and other allowances heretofore made to Dr. Mutch, be continued until September 30, 1936, and that thereafter an honorarium of one hundred and seventy dollars per month be paid to Dr. Mutch as Pastor Emeritus until further action by the Board. "It is understood that Dr. Mutch's use of the Manse for occupancy will be extended beyond September 30th for such period as may be necessary to enable him to make arrangements for a new residence." At no time did petitioner request or suggest the payment of the honorarium provided in the resolution. During his pastorate the membership of the Bryn Mawr Church increased from approximately *211 250 members to 1,100. During this time a new church building and a new school were constructed at a combined cost of $710,000. Of this amount the mortgages outstanding at petitioner's retirement amounted to less than $130,000. After his resignation petitioner at no time agreed to render services to the church and was under no obligation to do so thereafter. However, in the absence of the regular pastor he did voluntarily render occasional services and at the request of individual members of the congregation he officiated at formal services such as weddings and funerals. Opinion LEMIRE, Judge: The single issue presented is whether the sum of $2,040 in the form of monthly payments of $170 received by petitioner during 1947 constituted a gift and is, therefore, excludable from gross income under section 22 (b) (3) of the Internal Revenue Code, [1] or whether, as respondent determined, such payments constitute taxable income for the year involved. *212 The evidence shows that petitioner had rendered long years of service to his church and was deeply revered by his congregation. Through his leadership and guidance the church greatly increased its membership and had successfully undertaken a building program costing over $710,000. When petitioner informally notified the Session, the board for spiritual matters, of the Bryn Mawr Presbyterian Church that he planned to retire, the Session was concerned with maintaining petitioner in a manner and standard of living befitting a Pastor Emeritus of their church. Thereafter, the Board of Trustees, the governing board for financial matters of the church, passed a resolution authorizing monthly payments of an "honorarium" effective on the date when petitioner's salary as active pastor was to be terminated. In support of his contention that the payments in question constituted gifts petitioner relies upon the testimony of the three members of the Session. These witnesses testified in substance that in their recommendations to the Board of Trustees they believed the payments to be accorded petitioner were in the nature of a gift. However, no member of the Board of Trustees was called as a *213 witness and no evidence was offered as to how payments of the petitioner were carried on the books and records of the church. Other than the language of the resolution itself, there is no evidence of the intent of the Trustees in passing the resolution. The question of intent is one of fact. We think the facts and circumstances disclosed by this record are substantially similar to those presented in Charles Schall, 11 T.C. 111, wherein we held that the taxpayer had not sustained his burden of proof. With due deference to the view expressed by the United States Court of Appeals for the Fifth Circuit, 174 Fed. (2d) 893, reversing our decision in Schall, supra, we think the petitioner here has likewise failed to sustain the burden of showing error in the determination of the respondent in regard to the payments made to petitioner by Bryn Mawr Church. Since the deficiency results from other adjustments made by the respondent and which are not contested, we sustain the deficiency as determined and hold that there is no overpayment due petitioner. Decision will be entered for the respondent. Footnotes
1. SEC. 22. GROSS INCOME. * * *
(b) Exclusions from Gross Income. - The following items shall not be included in gross income and shall not be exempt from taxation under this chapter: * * *
(3) Gifts, bequests, devises, and inheritances. - The value of property acquired by gift, bequest, devise, or inheritance. There shall not be excluded from gross income under this paragraph, the income from such property, or, in case the gift, bequest, devise, or inheritance is of income from property, the amount of such income. For the purposes of this paragraph, if, under the terms of the gift, bequest, devise, or inheritance, payment, crediting, or distribution thereof is to be made at intervals, to the extent that it is paid or credited or to be distributed out of income from property, it shall be considered a gift, bequest, devise, or inheritance of income from property; * * *↩