William M. Taylor and Carrie Staton Taylor v. Commissioner.
Taylor v. Commissioner
Docket No. 30813.
United States Tax Court
1953 Tax Ct. Memo LEXIS 25; 12 T.C.M. (CCH) 1406; T.C.M. (RIA) 53403; December 11, 1953
Roger S. Randolph, Esq., 1107 First National Building, Tulsa, Okla., for the petitioners. William B. Riley, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The respondent determined deficiencies in the income tax of petitioners in the amounts of $572.35 for 1944, $1,610.54 for 1945, and $153.10 for 1946. The principal issue is whether the amounts received by petitioner William M. Taylor from the law firm of Hudson and Hudson during the years 1944, 1945, and 1946 should be excluded from the gross income of petitioners as "gifts" under Section 22 (b) (3) of the Internal Revenue Code. Findings of Fact The petitioners, husband and wife, are residents of Tulsa, Oklahoma, and filed their *26 income tax returns for the taxable years with the collector of internal revenue for the district of Oklahoma. They kept their books and filed their returns on the basis of cash receipts and disbursements. William M. Taylor will hereinafter be referred to as the petitioner. The petitioner is an attorney-at-law. During the period January 1, 1942, to April 1, 1944, he was employed as an assistant county attorney in charge of civil litigation for Tulsa County, Oklahoma. From April 1, 1944, to September 1, 1945, he was employed by the Coralena Oil Company (hereinafter sometimes referred to as "Coralena"), which was dominated by one A. H. Kasishke (hereinafter referred to as "Kasishke"). His duties while in the employ of Coralena included supervision of the legal work handled for the company by outside lawyers. From September 1, 1945, to December 15, 1946, he was again employed as an assistant county attorney of Tulsa County, Oklahoma. During the last two weeks of the year 1946 he was employed by the Sinclair Oil Company. For the three months' period in 1944 during which petitioner served as an assistant county attorney, his aggregate earnings were $900. Subsequent to April 1, 1944, he *27 was paid a salary of $400 per month while in the employ of Coralena. In 1944 he owned an equity of an undisclosed amount in his home and a 1940 DeSoto automobile. His debts consisted of the mortgage indebtedness on his house, some current bills at a dry goods store, some rent due for office space formerly used by him, and a few hundred dollars owed to a former law partner. On April 1, 1944, Coralena was involved in litigation in the United States District Court for the Northern District of Oklahoma wherein B. A. Baker had sued Coralena and Kasishke to impress a trust upon certain oil properties. On the date of petitioner's employment by Coralena, the lawsuit had been tried but the judgment of the trial court had not yet been rendered. The trial court's findings of fact and conclusions of law in the lawsuit, which were favorable to Baker, were filed April 20, 1944, and Baker was requested to submit a proper decree for entry of judgment on May 1, 1944. Upon learning of the impending unfavorable judgment, petitioner recommended that an effort be made to reopen the case. After being informed that Kasishke desired to retain outside lawyers to handle the matter, petitioner suggested *28 to his immediate superior at Coralena, H. C. Shelton, that they consult former United States District Judge Franklin E. Kennemer. Shelton and petitioner conferred with Judge Kennemer, who advised them that such motion to reopen the case could be filed. In the discussion it was stated that outside counsel was wanted to handle the matter. Several names were mentioned. Judge Kennemer commented favorably upon two lawyers for that purpose, Judge Hardy and Robert D. Hudson. Petitioner and Shelton thereupon went to Kasishke's home that evening and reported on their consultation with Judge Kennemer. At Kasishke's direction Shelton and petitioner sought out Judge Hardy, who, after studing the case, declined to undertake the matter. Upon leaving Judge Hardy's office petitioner suggested that they see Robert D. Hudson, whose office was nearby. Mr. Hudson was an equal partner with his father in a law firm known as Hudson and Hudson. Robert D. Hudson will hereinafter be referred to as "Hudson". Hudson was not in his office that day, but Shelton and petitioner saw him the following day. Subsequently, Hudson was taken to Kasishke's home where the case was discussed further. Kasishke finally determined *29 to employ Hudson. The fee arrangement between them was embodied in a letter from Hudson to Kasishke and Coralena dated May 2, 1944. Petitioner did not participate in the determination of the fee. During the period when the employment of Hudson was under consideration by Shelton and Kasishke, petitioner spoke favorably of him and stated that he was a good and very capable trial lawyer. A motion to reopen the Baker litigation had been filed on April 27, 1944. On this motion petitioner appeared as one of the counsel for defendants in addition to the original counsel retained by Coralena and Kasishke. An amendment to the motion to reopen was filed May 5, 1944, on behalf of the defendants, in which Hudson appeared as an attorney for defendants in addition to petitioner and the original attorneys. A judgment for plaintiff was entered May 13, 1944. Both Hudson and petitioner appeared as counsel of record for the defendants, in addition to the original counsel, in subsequent proceedings culminating in a denial of a petition for certiorari to the Supreme Court of the United States in 1945. The original counsel withdrew as attorneys of record on May 26, 1945, and subsequent thereto the defendants *30 were represented by Hudson and petitioner as counsel of record in the hearings and proceedings for an accounting. The final order in the accounting proceedings was entered September 6, 1945. The services performed by Hudson included preparation of and argument on motion to reopen the cause in the United States District Court, appeal to the United States Court of Appeals for the Tenth Circuit, petition for certiorari to the Supreme Court of the United States, and hearings with respect to an accounting, with the attendant research, oral arguments and drafting of pleadings and briefs. The petitioner and Shelton did some work on the Baker case. They went to Hudson's office quite frequently while it was being litigated. While there they used Hudson's library for legal research and reported to Kasishke on the preparation of the briefs. Petitioner did not participate in any proceedings in court in connection with the litigation. While working on the case, Hudson discussed it from time to time with petitioner and Shelton. Hudson did not ask petitioner to render him any assistance, and petitioner's activities in connection with the lawsuit did not increase the fees paid to Hudson. Hudson *31 received an aggregate of $25,000 in fees from Coralena or Kasishke for services rendered in the Baker litigation. The payments were made to him on seven different occasions during 1944 and 1945. On July 10, 1944, L. G. Keppler brought suit against Kasishke and Coralena with respect to a matter similar to the one involved in the Baker suit. Hudson represented the defendants in the Keppler litigation, in which both petitioner and Hudson appeared as counsel of record. Both withdraw as counsel of record in October 1945. The fees referred to above covered only the Baker litigation; Hudson was compensated separately for his handling of the Keppler suit. Beginning in May 1944 and continuing into 1946, Hudson made a number of payments to petitioner. Each such payment was made after Hudson had received payment on his fees from Coralena and Kasishke. The payments to petitioner were intended to be equal to approximately one-fourth of the fees received by Hudson from Coralena and Kasishke. The aggregate amounts thus paid to petitioner during the taxable years were as follows: Year
Amount
1944
$1,925.00
1945
5,025.00
1946
500.00
Total
$7,450.00 These payments from Hudson *32 to petitioner were intended to be secret. They were made by checks drawn to cash. Neither Shelton nor Kasishke was informed either by petitioner or Hudson that these payments were being made. Hudson and his father, as equal partners in the law firm of Hudson and Hudson, shared equally in the fees received from Coralena and Kasishke, and they bore an equal burden of the expenses in connection therewith, including the payments to petitioner. Neither Hudson nor his father claimed any portion of the payments to petitioner as deductions on his own income tax returns, nor did Hudson file a protective claim for refund after being advised to do so by tax counsel. Petitioner is not related to Hudson either by blood or marriage and there was no close association between their families. Petitioner had known Hudson professionally at least since the late 1920's. Prior to Hudson's entry into the Baker litigation, Hudson would meet petitioner at bar association meetings and around the court house. He associated with him more frequently on both a social and professional basis after being retained by Coralena and Kasishke. Hudson did not have knowledge of, nor did he inquire as to the amount of *33 petitioner's debts. Petitioner did not use the payments received from Hudson to liquidate his debts. Hudson's net income for the years 1944, 1945 and 1946 was $7,977.75, $7,066.28, and $2,119.53, respectively. During those years, he did not make any large or substantial payments, which he claimed to be gifts, to any person or lawyer, other than those here in controversy. Neither Hudson nor his father had ever made any gifts of money to petitioner prior to the payments here involved, although they had made loans to him in undisclosed amounts. Hudson had never previously made any gifts to any other lawyer in excess of $50. The petitioner did not report the payments made to him by Hudson as income in income tax returns filed for the years in which they were received. In determining the deficiencies for these years the respondent treated these payments as income taxable to petitioner. The payments made to petitioner by Hudson during the taxable years were not gifts. Opinion RAUM, Judge: Section 22 (a) of the Internal Revenue Code defines gross income broadly to include "gains, profits, and income derived from any source whatever." Section 22 (b) (3) provides *34 that "property acquired by gift" shall be excluded from taxable income. It has been held that the latter provision should be strictly construed in such manner as to give the broad provisions of Section 22 (a) taxing all income their proper effect. N. H. Van Sicklen, Jr., 33 B.T.A. 544, 549; United States v. Robertson, 190 Fed. (2d) 680 (C.A. 10), affirmed, 343 U.S. 711. In the Robertson case, the court of appeals stated (190 Fed. (2d) at p. 682): "Sec. 22 (a) broadly defines gross income and by its sweeping terms it is evident that Congress intended that income should be taxed comprehensively and in so doing intended to exercise to the 'full measure' its constitutional power. * * * Under this Section all income is taxable unless specifically excluded by other provisions of the statute. Sec. 22 (b) (3), excludes gifts from the income tax provisions but in view of the general purpose to tax all income, specific exemptions should be strictly construed. * * *" The question before us is predominantly one of fact. Petitioner argues that the payments were gifts; his contention in essence is that they flowed merely from Hudson's generosity. *35 The burden of proof is upon him, and we think that burden has not been discharged. True, both petitioner and Hudson testified that these payments were gifts and that there was no "legal consideration" therefor. Hudson's testimony indicated that he felt sorry for petitioner because petitioner was earning only $400 a month at Coralena and was harassed by debts. Yet the record before us discloses that petitioner's earnings at Coralena were at a higher rate than he had been receiving as assistant county attorney, and there is no showing in this record that his debts were oppressive. Apart from themortgage loan on his home, his debts do not appear to have been of major consequence. As to the mortgage, the fact is that petitioner had an equity in his home, and there is no showing whatever that payments on the mortgage loan in conjunction with other expenses of home ownership were any more burdensome than rent which he would have to pay if he did not own his home subject to themortgage. Moreover, Hudson did not know what petitioner's debts were, nor did he inquire. The facts before us make incredible the conclusion that the payments to petitioner were merely gifts. Hudson was not related *36 to petitioner by blood or marriage, and there were no close ties between the two families. Petitioner was not a natural object of Hudson's bounty. Hudson had never made gifts of any consequence to other attorneys. Although the alleged gifts were in the aggregate of more than $7,000, Hudson's own net income was under $8,000 during two of the years involved and was under $3,000 for the third year. Moreover, there is no proof whatever that Hudson's father, who bore half the burden of the payments, in any way intended to make a gift. The fact is that the payments in question were intended to be approximately one-fourth of the fees received from Coralena and Kasishke, that they were made in each instance after the fee had been received, and that in placing the burden of the payments upon both Hudsons equally such payments were regarded as being a charge against the fees received. We heard the witnesses and have given careful study to the record. The Commissioner has determined that the payments to petitioner constituted income. The burden was on the petitioner to show that they were not income. He has undertaken to discharge that burden by attempting to prove that they were "gifts". Notwithstanding *37 the testimony of petitioner and Hudson, the evidence before us is plain, as it is abundant, that the payments were not gifts, and we have made a finding to this effect. In the circumstances, the determination of the Commissioner must stand. Decision will be entered for the respondent.