George G. Ebner v. Commissioner. George G. Ebner and Myrtle H. Ebner v. Commissioner. Henry R. Steinhoff v. Commissioner.
Ebner v. Commissioner
Docket Nos. 53079-53081.
United States Tax Court
T.C. Memo 1958-108; 1958 Tax Ct. Memo LEXIS 122; 17 T.C.M. (CCH) 550; T.C.M. (RIA) 58108; June 9, 1958
*122 1. George Ebner, as sole proprietor, during the taxable year 1948, and together with Henry Steinhoff as partners during 1949 and 1950, operated a bookmaking establishment in Kenosha, Wisconsin. During said years, petitioners paid or reimbursed in cash railway and taxi fares to and from their premises of out-of-town customers to encourage their patronage and to meet competition of other gambling houses in the area. Such cash payments were recorded contemporaneously with the disbursement thereof, on daily record slips maintained by Ebner during 1948 in the amount of $180.05, and by the partners during 1949 and 1950 in the amounts of $11,180.90 and $9,290.08, respectively, and deducted as business expenses in computing taxable income for those years. Held: During the taxable years in question, the aforesaid amounts were properly deductible as ordinary and necessary expenses in carrying on their business under section 23(a)(1)(A), Internal Revenue Code of 1939. 2. During the same period, petitioners also made disbursements for various items and purposes allegedly connected with the operation of their gambling business which they denominated as "advertising" and "miscellaneous" expenses *123 on their records and deducted under section 23(a)(1)(A) on their returns for the years in question. Respondent disallowed all or part of each of said items either for lack of substantiation, or as personal or capital expenditures, or as being in the nature of bribes to the local police. Amounts allowable as so-called advertising and miscellaneous expenses determined. 3. Petitioners have failed to meet the burden of proving error on the part of respondent in determining additions to tax under section 291(a) as to Ebner's income tax returns for the years 1949, 1950, and 1951, and his self-employment return for 1951, and as to Steinhoff for the years 1949 and 1950. Amounts of additions to tax are subject to recomputation under Rule 50. 4. Respondent sustained in determining additions to tax under section 293(a) as to both Ebner and Steinhoff for the year 1950, and also as to Ebner's self-employment tax for 1951 because of failure of said petitioners to meet the burden of proof of error on the part of respondent. Amounts of such additions are subject to recomputation under Rule 50. Other additions to tax under section 293(a) disallowed. 5. Respondent sustained in determining additions *124 to tax under sections 294(d)(1)(A) and 294(d)(2), petitioners having failed to meet the burden of proving error, the additions being subject to recomputation under Rule 50. Maurice Weinstein, Esq., 623 North 2nd Street, Milwaukee, Wis., for the petitioners. Thomas J. Donnelly, Jr., Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: This consolidated proceeding involves deficiencies in income tax and additions to tax determined against petitioners as follows: Additions to the Tax Under
Dkt.
Sec.
Sec.
Sec. 294
Sec. 294
No.
Petitioner
Year
Deficiency
291(a)
293(a)
(d)(1)(A)
(d)(2)
53080
George G. and Myrtle H.
Ebner
1948
$ 169.82
$ 8.49
$403.51
$272.65
53079
George Ebner
1949
3,483.40
$ 459.60
174.17
459.60
178.44
1950
2,597.35
1,071.82
214.36
377.80
155.84
1951
73.16
15.36
3.66
23.40
14.04
53081
Henry R. Steinhoff
1949
1,006.32
111.43
50.32
111.43
48.32
1950
949.23
237.31
47.46
74.82
44.89 In Docket No. 53080, respondent disallowed real estate tax deductions claimed by George G. and Myrtle H. Ebner for the year 1948 in the amount of $162.03, and in Docket No. 53079, disallowed the same amount claimed by George for the year 1949. Said issue was raised in the pleadings but no evidence was presented relating *125 thereto at the trial. As petitioners do not argue the issue on brief, we deem it to have been abandoned by them. The parties stipulated that the statute of limitations is not in issue herein for any of the years in question. The principal issues presented for our decision herein are: (1) Whether expenditures, designated as "fares," "advertising" and "miscellaneous," allegedly made by petitioners in the operation of their bookmaking business during 1948, 1949, and 1950, are deductible as ordinary and necessary business expenses under section 23(a)(1)(A) of the Code of 1939, and if so, whether and to what extent they have been substantiated; and (2) whether the additions to tax under sections 291(a), 293(a), 294(d)(1)(A), and 294(d)(2) of the Code were properly determined. After the instant trial, respondent notified the Court by letter, dated March 26, 1958, that he concedes that the alleged expenditures mentioned hereinabove are not to be disallowed on public policy grounds, Commissioner v. Sullivan, - U.S. - (March 17, 1958), but notes, however, that this concession does not include "the issues of disallowance on public policy grounds of those expenses in the nature of bribes * * *126 *." Findings of Fact Some of the facts are stipulated and, as stipulated, are incorporated herein by this reference. General George G. and Myrtle H. Ebner are husband and wife, and during the taxable years 1948 to 1951, inclusive, resided at 3019 Roosevelt Road, Kenosha, Wisconsin. They filed a joint return on a calendar year basis for the taxable year 1948, and George filed an individual return for 1949, and 1951, with the then collector of internal revenue at Milwaukee, Wisconsin. Henry Steinhoff, residing at 38116 16th Avenue, Kenosha, Wisconsin, filed an individual return on a calendar year basis for the taxable year 1949 with the then collector of internal revenue at Milwaukee, Wisconsin. (For facts relating to the issue of petitioners' returns for 1950, see infra under heading "Additions to Tax," and sub-heading "Section 291(a).") Myrtle H. Ebner is a petitioner herein because of having joined with her husband in filing a joint return for the year 1948. For convenience, George G. Ebner and Steinhoff will hereinafter sometimes be referred to as the petitioners. During the year 1948, George was a bookmaker operating a gambling establishment as a sole proprietorship and engaged *127 in the business of accepting, placing, and making wagers and bets on various sporting events such as baseball, football, horse racing and other events, with his place of business located at 5505-7 Sixth Avenue, in the City of Kenosha, Wisconsin. In November of 1948, George entered into a partnership with Steinhoff, as bookmakers, and during the taxable years 1949 and 1950 they operated a gambling establishment under the name of Ebner and Steinhoff (hereinafter referred to as partnership), and engaged in substantially the same activities as the sole proprietorship. Their place of business was located in a basement at 618 - 55th Street, Kenosha, Wisconsin. Ebner had a two-thirds interest and Steinhoff a one-third interest in said partnership and its profits. Deductions On his (joint) Federal income tax return for the year 1948, George deducted the respective amounts of $180.05 and $224.50, representing the cost of "fares" and "advertising," expended by him in connection with the operation of his gambling enterprise. Respondent, in his statutory notice, disallowed said amounts on the grounds (a) that allowance of such expense is contrary to public policy (since waived), and (b) that *128 the actual expenditures were not substantiated in amount or as ordinary and necessary expenditures. The partnership book of account for 1948 showed total "ins" from bets on horses in the amount of $618,209.60 and "outs" in the amount of $577,124.85. In addition, "ins" from baseball were $19,497.05 and "outs" were $18,860.45. During the year 1949, said book showed total "ins" in the amount of $1,083,491.40, "outs" in the amount of $1,007,079.50, and total expenses of $74,243.31. During 1950, the total "ins" from wagers on horses were in the sum of $906,009.60 and "outs" were $852,045.70. During the same year, "ins" for baseball and football were in the aggregate amount of $41,599.05; the "outs" were $24,989.75; and expenses were $50,399.35. Partnership net income, as reflected on the account book of Ebner and Steinhoff for the taxable years 1949 and 1950, was in the respective amounts of $14,159.78 and $15,795.61, and in arriving at said income petitioners deducted the following sums: Nature of
Amount
Amount
Expenses
1949
1950
Fares
$11,180.90
$9,290.08
Advertising
671.25
547.00
Miscellaneous
4,444.07
2,222.87 Respondent, in his statutory notice, disallowed said deductions for "fares" and "advertising" *129 in their entirety and disallowed claimed "miscellaneous expenses" mentioned above in the amounts of $1,127.74 and $1,550 for 1949 and 1950, respectively, for the reasons that the allowance of such expenses is contrary to public policy (since waived) and that the actual payment thereof is not substantiated in amount or as ordinary and necessary expenses. For the year 1949, respondent also disallowed the additional amount of $2,553.75 claimed as "miscellaneous expenses" on the ground that such expenditures represented capital expenditures. Fares. During the first three months of 1948 (and in years prior thereto), George, operating as a sole proprietor, had engaged in the practice of paying railroad and taxi fares to and from Kenosha, Wisconsin, of out-of-town patrons who came to his establishment to gamble. This practice, discontinued in the last nine months of 1948, was revived by the partnership in 1949 in order to obtain new business and to meet the competition of other gambling houses in Kenosha. Said payments were made to the patrons in cash by either one of the partners, generally at the end of the day when the customers left the premises. Payments were made at the end of the *130 day to patrons because the petitioners would by that time have become familiar with those who had made bets during the day and the system prevented a customer from collecting at one gambling establishment and then going to another gambling house in order to be paid there too. In instances where patrons came to petitioners' gambling establishment by taxi, said payments were made in cash to taxicab drivers when they delivered the patrons to the premises and when the drivers picked up the patrons for the return trip. In other instances where out-of-town customers came to petitioners' premises in their own vehicle, they collected the usual train fare for making the round trip. Other gambling establishments in the Kenosha area engaged to some extent in a similar practice. In instances where individuals would not know where to go in Kenosha to gamble, several of the taxicab drivers would usually take them to petitioners' partnership premises because Ebner and Steinhoff gave the cab drivers good tips. Patrons came from various places such as Milwaukee, Racine, Waukegan, Madison, Sheboygan and Manitowoc, Wisconsin, and Chicago, Illinois, although most of the partnership patrons during 1949 *131 and 1950 came from Milwaukee, about 38 miles from Kenosha. During these years, law enforcement officials in the City of Milwaukee were very strict on gambling, and there was always the chance of a gambling establishment in the city being raided. Some of petitioners' patrons felt it was practically impossible to have gambled in Milwaukee during the years 1948 to 1950, inclusive, while others felt that they could have done so through one means or another, but they preferred not to because "things were too hot" in Milwaukee. Some patrons would have patronized the partnership even if fares had not been paid but others would not have done so, or would have been patrons less often if fares had not been paid. During 1948, George, as a sole proprietor, and during 1949 and 1950, George, Steinhoff and an employee, maintained daily record slips upon which were recorded amounts taken in on wagers, amounts paid out on wagers, and expenses paid. As part of said expenses, they recorded on the daily record slips during the years numerous amounts designated "fares" and, after each such noted amount was listed, either initials or a first name or nickname of a person to whom such amount was paid to *132 reimburse said person for his traveling expenses to and from petitioners' premises. The total of such amounts listed on these slips for said years was deducted as business expenses by Ebner in 1948 in the amount of $180.05, and by the partnership in 1949 and 1950 in the respective amounts of $11,180.90 and $9,290.08, in computing the taxable income for those years. During the taxable years in question, petitioners disbursed the amounts in question for "fares," i.e., transportation of patrons to and from petitioners' place of business in order to procure and retain their patronage. Advertising. During the taxable years involved herein certain so-called "advertising expenses" in the respective amounts set forth in the following schedule were entered on the daily record slips and deducted on petitioners' returns for such years: A. Group I:
1948
1949
1950
Sheriff's Tickets
$ 20.00
Patuemani Ball
50.00
Wisconsin Police
Jr.
50.00
County Police
Tickets
$ 50.00
(a) Police Journal
85.00
$ 70.00
Police Ad
75.00
(b) Police Benefit
100.00
Sub-Total, Group
I
$120.00
$210.00
$170.00
Group II:
1948
1949
1950
Flowers (P.
Keegar)
$ 5.00
Fight Tickets
$ 6.00
(c) Cards - Meyers
130.00
$100.00
Kenosha Enter-
prise
100.00
Kenosha
25.00
(d) Bowling Team
35.00
133.25
Comets BB Team
45.00
150.00
Kenosha News
3.00
Kenosha Lions
9.00
Armed Forces
Tickets
12.00
Firemen's Ball
15.00
Sub-Total, Group
II
$ 40.00
$451.25
$277.00
Group III: Bnai Zedo
$ 5.00
Beth Hellel
10.00
St. Carmel
12.50
Mt. Carmel
25.00
Am. Vets
10.00
Military Ball
2.00
St. James
$5.00
V.F.W.
5.00
Holy Rosary
20.00
Sub-Total, Group
III
$ 64.50
$ 30.00
Grand Total
$224.50
$691.25 * *133 $447.00 * The "Police Journal" The "Police Journal" (A. Group I(a)) is a publication of a Wisconsin police association described by petitioners as a "protective association." Upon being solicited by law enforcement officers of Kenosha, the partnership purchased several anonymous ads in said journal which read: "A contribution from a friend." The item designated "Police Benefit (A. Group I(b))" was expended for tickets to a policemen's ball. Except for the notations made in connection with charging the disbursements on the books, there is no information relating to the circumstances under which the remaining items under A. Group I were paid. George had lived in Kenosha about 32 years. He was friendly with the police and knew many of them. During the taxable years 1949 and 1950, the partnership establishment was raided by the local police on several occasions and petitioners were fined about twice for gambling on the premises. The item designated "Cards-Meyers" (A. Group II(c)) refers to payments *134 to an individual named Matt Myers who published a baseball score card which contained advertising, and which was placed on store counters throughout Kenosha. The partnership purchased advertising space on said cards. The item designated "Bowling Team" (Group II(d)) refers to a bowling team, sponsored by George in 1948 and later by the partnership, to advertise the name "Ace Cigar" which was a name by which the gambling establishment was known to patrons. Again, except for the notations made in charging disbursements on the books, there is no information relating to the circumstances under which the remaining items in A. Group II were paid. With respect to the items in A. Group III, petitioners made contributions to Am. Vets. and V.F.W., both being organizations exempt under section 23(0)(4). Except for notations made in charging disbursements on the books, there is no information relating to the circumstances under which the remaining items in A. Group III were paid. Miscellaneous expenses. On its income tax return for the taxable years 1949 and 1950, the partnership deducted as "miscellaneous expense" the respective amounts of $4,444.07 and $2,222.87, of which respondent allowed *135 the sums of $762.58 and $672.87, respectively. Out of the amount of $4,444.07, respondent disallowed $2,553.75, representing the following items which had been deducted in full by the partnership for the year 1949: Items
Date of Purchase
Cost
Television Set
March 1949
$ 479.95
Equipment
March 1949
328.80
Ventilation
April 1949
245.00
Air Conditioner
July 1949
1,500.00
Total
$2,553.75
On October 26, 1949, a time bomb exploded on the partnership premises and caused considerable damage to the building and equipment, including the above-mentioned television and air conditioner. The amount of the loss is not known by petitioners. The television set was demolished. There is no evidence of whether or not petitioners had insurance coverage. The partnership did not operate on the premises for several weeks while damage was being repaired. Partnership records show that in October 1950, it paid the sum of $145 for a television tower. In March 1951, petitioners vacated the premises and left behind the ventilation system installed in the roof of the building and the air conditioner. Respondent, likewise, disallowed the amount of $1,127.74 and $1,550 for the years 1949 and 1950, which amounts included, among others, *136 part of the items listed in the following schedule: [1] *137 B. Group I
1949
1950
Cigars
$ 443.60
$ 359.25
Sandwiches
11.55
None
Candy Feb.
1.00
None
Dec.
5.00
None
Liquor
13.40
None
Milk
1.50
None
Matches
10.00
None
Sub-Total, Group I
$ 486.05
$ 359.25
Group II
Doc Roirdon
100.00
None
Fox Agency
8.00
None
S.S.
5.50
None
Ace Ext.
25.00
None
Kenosha Co.
235.00
None
Hoffman
479.95
None
Lake Shore
328.80
None
Fowler
10.00
None
Entertainment
20.00
None
Xmas Presents
57.00
None
Beinamen
105.50
Onne
Merchant Police
None
40.00
D. G. Johnson
None
250.00
Bob Bailey
None
274.77
Sub-Total, Group II
$1,414.75
$ 564.77
Group III
Replaced
45.00
None
Foster Tax Service
25.00
None
Trip
None
250.00
Auditor Ipsen
None
40.00
Television Tower
None
145.00
Linoleum
None
127.00
Plumber
None
288.90
Electrician
None
120.00
Speakers
60.00
None
Sub-Total, Group III
$ 170.00
$ 970.90
Grand Total *
$2,030.80
$1,894.92
During 1949 and 1950, the partnership served sandwiches, soda, candy, liquor and cigars at their establishment, all of which were available to patrons without charge. (See B. Group I above.) This practice was followed to avoid losing business. Other gambling establishments in the Kenosha area were known to have engaged to some extent in a similar practice. The amounts so expended by the partnership in 1949 and 1950 for the purpose above set forth were $486.05 and $359.25 which were charged as "miscellaneous expenses" and are itemized in the foregoing schedule under B. Group I. Except for notations made in charging disbursements on the books, there is no information relating to the circumstances under which the items in B. Group II and III were paid. Additions to Tax Section 291(a). Ebner filed individual income tax returns for the years 1949 and 1951, the respective filing dates being April 17, 1950, and April 3, 1952. Ebner failed to file a self-employment tax return for 1951. Steinhoff filed an individual income tax return for the year 1949. The income tax returns above referred to were prepared by Paul Ipsen, an accountant. The records of the office of *138 district director of internal revenue (Milwaukee, Wisconsin) show no record of the filing of an income tax return by either Ebner or Steinhoff for the year 1950, or of a partnership return for Ebner and Steinhoff for that year. It was the practice of the accountant to mail all income tax returns at the end of the day on which they were completed and executed. It was also his practice to request extensions of time for filing returns when he could not complete them by the due date. The accountant presented a copy of a return for Ebner for 1950, made out in the accountant's handwriting, showing Ebner's name on the signature line, the accountant's name on the certification line, and the date of April 15, 1951. The accountant kept no record of the filing of returns. He was unable to produce any written extensions of time issued by the collector or director for any of the years in question. His (Ipsen's) records had been left with another accountant who had succeeded to his business and had misplaced his records in transferring the business activities of the latter from office to home. Ebner's net earnings in 1951 from self-employment were $400 or more. Section 293(a). To the extent here *139 material, we re-incorporate our Findings under the headings "Deductions" and "Additions to Tax," subheading "Section 291(a)." No part of the deficiencies in income taxes of Ebner for the years 1948 (joint with wife), 1949 and 1951, or of Steinhoff for the year 1949 was due to negligence, or intentional disregard of rules and regulations. Sections 294(d)(1)(A) and 294(d)(2). The gross income of Ebner for each of the years 1948 to 1951, inclusive, and the gross income of Steinhoff for each of the years 1949 and 1950, from sources other than wages, could reasonably have been expected to exceed $100, and the gross income of each for each of said years could reasonably have been expected to exceed $600. For the years 1948, 1949, and 1950, Ebner filed declarations of estimated tax on the following respective dates and at the time of such filings paid or was credited with the following respective amounts: Taxable
Date
Amount
Year
Filed
Paid
1948
1-25-49
$3,500.00
1949
1-23-50 *
1,622.00
1950
1-23-51 *
1,180.60 **
Ebner filed no declaration of estimated tax for the year 1951. Steinhoff filed a declaration *140 of estimated tax for the year 1949 on January 23, 1950, and paid therewith $309. There is no evidence that he filed a declaration of estimated tax for the year 1950 but he was allowed a deferred credit from 1949 in the amount of $201. (Note: The net income of Ebner and Steinhoff for the years in question under this sub-heading will be determined under Rule 50.) Opinion I. Deductions Fares. Respondent, in his statutory notice, disallowed the entire amount designated as "fares" and deducted by petitioners on their returns for the taxable years 1948, 1949, and 1950, on the grounds that such payments are not deductible as ordinary and necessary business expenses of petitioners' gambling enterprise within the intendment of section 23(a)(1)(A) of the Code of 1939; [2] *141 that they are not substantiated as having been actually disbursed; and, in any event, that they violate the sharply defined public policy of the State of Wisconsin. [3]
At the outset, as already stated, with respect to the last contention, after briefs were submitted, respondent conceded that the fares in question (as well as "advertising" and "miscellaneous expenses," infra) are not to be disallowed on public policy grounds for the reasons enunciated recently in Commissioner v. Sullivan, supra, and respondent abandons this issue except for any "expenses in the nature of bribes." In essence, therefore, it is respondent's position that petitioners have failed to prove that the payment of railroad and taxi fares in question (i.e., $180.05 for 1948; $11,180.90 for 1949, and $9,290.08 for 1950), to transport their out-of-town patrons to and from their gambling establishment in Kenosha, Wisconsin, was an ordinary and necessary expense of their bookmaking activities, and if so that the amounts claimed therefor were actually expended. We disagree with respondent's view on this item. It is clear that reasonable expenditures for providing transportation for customers of a taxpayer are allowed as a deduction from gross income to the extent that they are "ordinary *142 and necessary" in carrying on a trade or business. Section 23(a)(1)(A), supra. Of course, deductions are matters of legislative grace and the burden is on the taxpayer to establish that the claimed expense, namely, transportation costs, is both ordinary and necessary to his particular business and area, Deputy v. du Pont, 308 U.S. 488, 493. The issue of whether such expenditures are ordinary and necessary under the Code raises primarily a question of fact, and is to be resolved according to the circumstances of each case. Commissioner v. Heininger, 320 U.S. 467 (1943), affirming 133 Fed. (2d) 567 (C.A. 7, 1943). We believe the statutory requirements, that an expense to be deductible must be ordinary and necessary, are clearly met by the facts in the instant case, when examined in the light of the decided cases on the subject. In the sense in which the word "necessary" has been defined as "helpful or appropriate," in our view, this expenditure was necessary. Welch v. Helvering, 290 U.S. 111 (1933). The term does not mean indispensable, and we are convinced that the payment of the fares involved herein was a reasonable requirement for successful operation of petitioners' business *143 in Kenosha. In this connection, Ebner testified that his gambling business declined considerably in the early part of 1948, when he discontinued the practice of defraying transportation expenses of his patrons, and that in the latter part of that year he found it necessary to resume such payments in order to retain his customers and to meet competition of several other gambling establishments in the Kenosha area. His testimony was corroborated by several out-of-town patrons who testified unequivocally that they would not have visited petitioners' premises in Kenosha, or at least not as often, if their fares had not been paid or reimbursed. We are satisfied that this testimony is to be believed, and that the record establishes that there were "reasonably evident business ends to be served, and an intention to serve them * * *." B. Manischewitz Co., 10 T.C. 1139 (1948). Likewise, we believe that the factor embodied in the concept of "ordinary" under the Code is here established. The record is clear that the reimbursement of transportation costs reflected the local practice in gambling establishments located some distance from the larger cities. It is by no means improbable that various *144 businesses, including gambling establishments, operating in out-of-the-way places might find it necessary to provide transportation for their clientele at the expense of the business as an inducement to become or continue as customers or patrons. We hold, therefore, that the payments of customers' fares are deductible as ordinary and necessary business expenses. See Charles J. Dinardo, 22 T.C. 430, 436 (1954), and cases cited therein. Relative to the substantiation of said fares, respondent contends that petitioners must establish by competent documentary evidence that each and every payment for fares recorded on the "daily record slips" maintained by them was actually disbursed to patrons or taxi drivers during the years involved herein. In essence, respondent argues that there is no practical means in which he can verify by audit, inquiry, or investigation the amount of such fares disbursed, if paid at all, because petitioners did not require receipts for such payments or obtain the complete names and addresses of the alleged recipients. Considering the illicit character of the business, we doubt whether such data would have been of material assistance in an audit since it is unlikely *145 that true names and addresses would have been furnished to bookmakers. It was to petitioners' interest to prevent duplication of payments, and in doing so to identify patrons by visual observation and such other means of identification as initials, first names, or nicknames. We have no doubt they did so to the extent that circumstances permitted. The record supports the view that all of the transportation payments were entered by petitioners in the daily record slips contemporaneously with the payment thereof, and that the payments were actually made as expense of transportation of customers. We are mindful that such entries are susceptible of manipulation so as to distort and overstate the expenditures made, and we naturally view with caution any issue, involving the operation of an illegal enterprise. Here, however, no fraud is suggested, and we find no evidence of inaccuracies in books and records, or any other circumstances which would justify our disregarding petitioners' records and testimony. Moreover, when we consider the magnitude of petitioners' gambling receipts ($618,209.60 in 1948; $1,083,491.40 in 1949; and $947,608.65 in 1950), and the ratio of disbursements for fares *146 in relation thereto, we do not believe that it is inherently improbable that such expenditures were actually made in the amounts claimed. The regularity and substantial nature of the expenditure is further corroborated by one of the taxi drivers who testified that he delivered out-of-town customers to petitioners' gambling premises six days a week the year round at which time he was paid in cash by Ebner or Steinhoff. Likewise, we note that respondent does not challenge the authenticity or completeness of petitioners' books and records reflecting gross receipts from bets for income tax purposes. In fact, respondent, on brief, avers that "some part of the claimed fare expenditures should be recognized" as actually disbursed, suggesting the allowance of 50 per cent of the amounts in dispute for fares would represent a reasonable allowance under Cohan v. Commissioner, 39 Fed. (2d) 540 (C.A. 2, 1930). We find no basis in the record to justify our limiting the deduction to 50 per cent or any other amount less than shown on the books. In the light of the foregoing, and the record as a whole, we hold that petitioners are entitled to deduct the "fares" in the amounts set forth in our Findings *147 of Fact as ordinary and necessary expenses of carrying on their business during the taxable years in question. Advertising. With respect to the disallowance of the so-called "advertising" expenses claimed by Ebner in 1948, and by the partnership in 1949 and 1950, on their returns, respondent contends, inter alia, that said expenses have not been substantiated since petitioners have offered no documentary evidence thereof. Alternatively, respondent argues that, assuming that the alleged expenditures were actually made, the payments listed in A. Group I of our Findings of Fact are violative of public policy, being in the "nature of bribes" and hence not deductible under section 23(a)(1)(A). As to items in A. Group I, the record shows that during 1948 Ebner, operating as a sole proprietor, paid local police officials and the sheriff's representatives the sum of $120 for tickets to various functions such as the policemen's ball, and during 1949 and 1950 paid the respective amounts of $210 and $170 for anonymous advertisements in a "Police Journal," a publication of a Wisconsin police association. These payments were denominated by petitioners as "advertising" expenses on the aforesaid *148 daily record slips and on their returns, as set forth in our Findings of Fact. For the reasons stated more fully hereinabove with reference to fares, we are satisfied that the entries of the items in A. Group I were accurately made by petitioners on the daily record slips and that the amounts were actually disbursed. Although we think the payment of these amounts is substantiated, it is our view that petitioners have failed to meet the burden of proving that said advertising expenditures were ordinary and necessary in carrying on their bookmaking activities within the meaning of section 23(a)(1)(A). See Nowland v. Commissioner, 244 Fed. (2d) 450, 453 (C.A. 4, 1957), affirming T.C. Memo. 1956-72 [15 TCM 368,]. We note that petitioners do not have the temerity to urge that they made the payments in question to encourage the local police to patronize their gambling business, and they have failed to demonstrate any basis for the view that the "advertising" expenses in A. Group I operated as ordinary and necessary expenses in carrying on their bookmaking activities. While there appears to be no reason for us to go so far as to characterize the payments as bribes (as urged by respondent), *149 we fail to envisage any theory upon which they may be deemed ordinary and necessary for the particular business, and petitioners appear unable to aid us. Accordingly, we sustain the disallowance of said items. Birnbaum v. Commissioner, 117 Fed. (2d) 395 (C.A. 7, 1941), affirming a Memorandum Opinion of the Board of Tax Appeals dated October 20, 1939. With reference to petitioners' alternative contention that the payments in dispute were deductible as charitable contributions, they have again failed to present the essential facts to support their claim. We have before us no evidence showing whether the contributees are "organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes" within the meaning of section 23(o)(2). [4] *150 Without such material facts, we cannot determine whether the organizations listed in A. Group I come within the statutory description. Harry F. Canelo, 41 B.T.A. 713, 734 (1940); Edward C. Moore, Jr., et al., Executors, 21 B.T.A. 279 (1930). Accordingly, since petitioners have failed to meet their burden of proof, respondent's disallowance of said items is sustained. Anent the alleged expenditures listed in A. Group II (see Findings of Fact), we find no evidence in the record upon which we can allow petitioners to deduct the items of "flowers" in 1948, or "fight tickets," "Kenosha Enterprise," "Kenosha," "Kenosha News," and "Kenosha Lions" in 1949, as ordinary and necessary expenses of *151 their gambling business. Assuming, as we do, that the amounts so deducted were actually paid, we nevertheless find nothing to support the view that they represent ordinary and necessary expenses. Since petitioners have failed to meet their burden of proof, we sustain respondent's disallowance of these deductions. N. H. Van Sicklen, Jr., 33 B.T.A. 544, 550 (1935); Birnbaum v. Commissioner, supra.
As to the items listed in A. Group II under the designation "Cards - Meyers" and "Bowling Team," we hold that petitioners are entitled to deduct the amounts in dispute under section 23(a)(1)(A). We are satisfied from Ebner's testimony that said amounts were spent to advertise "Ace Cigar," the style or name under which he operated his gambling establishment on Sixth Avenue, and that townsfolk in Kenosha, where he had resided some 32 years, knew that the name "Ace Cigar" represented petitioners' gambling establishment. The testimony of Ebner on these items appears credible and we are satisfied that petitioners derived some publicity for their business from the advertising cards and the bowling team. See Julia Dahl et al., Executors, 24 B.T.A. 1167, 1174 (1931). With respect to "Comets BB *152 Team" payments in 1949 and 1950 (in the aggregate of $195) (A. Group II), petitioners have failed to submit any evidence to show any connection between said disbursements and the conduct of their gambling activities, and we have no reason to surmise that said expenditures provided a source of publicity for their business. We, therefore, disallow this item. Likewise, the remaining items in A. Group II (Armed Services Tickets and Firemen's Ball) in the aggregate amount of $27 are unexplained, and while there may well be a basis for the deduction, there is no evidence to sustain petitioner's burden. We must, therefore, disallow the items. With respect to the items enumerated in A. Group III of our Findings (other than Am. Vets. and V.F.W. discussed infra), petitioners contend that said items are deductible either as ordinary and necessary expenses of their gambling business or as charitable contributions. We disagree. Petitioners have failed to present any supporting explanation relating to these disbursements. Petitioners' general testimony that the amounts in controversy were paid to the organizations listed in A. Group III is supported by contemporaneous entries, and for reasons expressed *153 hereinbefore, we have no doubt that said payments were actually made. However, there is no evidence in the record explaining the purpose of the expenditures or demonstrating that they are ordinary and necessary business expenditures. Birnbaum v. Commissioner, supra. It may well be that one or more of these expenditures were in the nature of charitable contributions, but again petitioners have failed to produce the supporting facts. Under the circumstances we must disallow the deduction of any of said items for failure to meet the burden of proof. We take a different position, however, with respect to the items in A. Group III paid to Am. Vets. ( $10) and V.F.W. ( $5). Contributions to these organizations undoubtedly qualify as deductions under section 23(o)(4). [5] *154 See "United States Treasury Department, Cumulative List of Organizations (Contributions to which are deductible under section 23(o) and section 23(q) of the Internal Revenue Code and the Corresponding Sections of Prior Revenue Acts), Revised to June 30, 1950." Allowance to petitioners will be made accordingly. Miscellaneous expenses. The partnership, on its returns for 1949 and 1950, deducted the respective amounts of $4,444.07 and $2,222.87 as "miscellaneous expenses," of which the respondent allowed the sums of $762.58 and $672.87, and disallowed the balance thereof because of lack of substantiation and also because some of the items were capital expenditures. Out of the aforesaid amount of $4,444.07, respondent disallowed $2,553.75 for the year 1949, representing the aggregate cost of a television set, equipment, ventilation ducts, and an air conditioner, all purchased by petitioners in 1949, and charged off in full in that year as business expenses. Respondent contends that these four items represent capital expenditures. Petitioners do not appear to question the proposition that under ordinary circumstances *155 these expenditures should be capitalized, but argue that the television set and equipment were "completely demolished" when the building was bombed on October 26, 1949, and the air conditioner and ventilation system were "left" in the building when petitioners moved out in March 1951, and urge that the full cost thereof should be allowed as a "current expense or loss" in 1949. We think it is clear that the items in question were capital expenditures, because it is apparent that each had an economic useful life beyond the taxable year 1949. Thus, there is no basis for deducting the full cost thereof as a current expense under section 23(a)(1)(A). Russell Box Co. v. Commissioner, 208 Fed. (2d) 452 (C.A. 1, 1953), affirming a Memorandum Opinion of this Court dated January 29, 1953 [12 TCM 46,]; Hotel Sulgrave, Inc., 21 T.C. 619 (1954). No issue relating to depreciation is before us. We come, therefore, to petitioners' alternative claim of a casualty loss to said assets under section 23(e)(1). Of course, only the actual loss suffered by petitioners from the blast is deductible as a casualty loss, and they have the burden of proving the essential facts upon which the right to relief *156 depends. Burnet v. Houston, 283 U.S. 223 (1931). The measure of damages under section 23(e)(1) to the items in dispute would be the difference between the fair market value of the properties immediately preceding the casualty and the value immediately thereafter, but not in excess of the adjusted basis of the property, and diminished by any insurance recovery. See Helvering v. Owens, 305 U.S. 468 (1939) (1944). Although petitioners offered in evidence the book entries showing the cost of said items, which we have accepted as accurate, they have not established the depreciation rate, the adjusted basis of the property, the value of the property immediately before and after the casualty, or any other evidence from which we can ascertain the amount of the loss incurred. Moreover, while it appears that the television set was demolished, nevertheless, as to this as well as the other items now being considered, the possibility and extent of any recoupment through insurance coverage has not been negatived. Except as to the television set, petitioners' claim on brief that the property in question was demolished is not supported by the record. To the contrary, Steinhoff testified that the *157 air conditioner could have been repaired. As to the air conditioner and ventilation system left in the building when vacated in 1951, the record likewise fails to support petitioners' argument that these assets were abandoned in 1949 and, hence, deductible as a business loss in that taxable year. A claim of loss predicated upon abandonment of property must be buttressed by evidence of an intention of the owner to discard the property, coupled with an act of abandonment, both in the year for which the loss is claimed. W. B. Davis & Son, Inc., 5 T.C. 1195, 1219 (1945), and authorities cited therein. Regulations 111, section 29.23(e)-3. [6] Here, petitioners do not urge that they intended to permanently discontinue the use of the air conditioner and ventilation system after the bombing in 1949, nor is there any evidence in the record thereof. Moreover, mere non-use of said property is not enough to establish a recognized abandonment for tax purposes. Citizens Bank of Weston, 28 T.C. 717, 720, affd., 252 Fed. (2d) 425 (C.A. 4, 1958). Since there is no evidence of an actual abandonment of said assets because of the casualty in 1949, or any evidence of such intention during 1949, petitioners *158 cannot claim a deduction therefor in that year. The law does not permit current deductions for losses which may be sustained in the future. Citizens Bank of Weston, supra.
Also, on its returns for 1949 and 1950, the partnership deducted certain "miscellaneous expenses" in computing taxable income (see B. Groups I, II, and III of our Findings), of which respondent disallowed a portion of the total amount claimed for each year on the grounds, among others, that said expenditures were not substantiated. Essentially, it is respondent's position that petitioners have adduced credible evidence relating only to a small portion of the items *159 listed in B. Group I (viz., cigars, sandwiches and liquor) and have wholly failed to substantiate any of the other expenses enumerated in B. Groups II and III. Respondent argues, therefore, that, accepting the principles of Cohan v. Commissioner, supra, petitioners are nevertheless entitled to deduct only the respective amounts of $762.58 and $672.87 for 1949 and 1950. Relative to the items in B. Group I, we think the evidence, including that of several former patrons of petitioners' establishment, who consumed items in this group without charge, is sufficient to sustain petitioners' burden of proving that these expenditures were in fact made, and qualify under the Code as ordinary and necessary expenses. See Rodgers Dairy Co., 14 T.C. 66 (1950). On the other hand, the evidence relating to the items in B. Groups II and III furnishes nothing more than petitioners' own statement that the amounts claimed therein are correct and fully deductible under section 23(a)(1)(A). We are not apprised of the underlying facts, and there is no circumstantial substantiation of the nature of the expenditures in question. To allow them would in effect permit petitioners to set themselves up as judges *160 of law and fact, and allow respondent no effective opportunity to defend against their self-serving conclusions. See Birnbaum v. Commissioner, supra.Although the claimed deductions in said groups were recorded on the partnership books, petitioners have failed to present any evidence relating to the attendant circumstances under which the disallowed items were disbursed. It is our view not only that these items are far from self-explanatory, but that some of them (such as television tower, speakers, Doc Roirdon, Xmas presents), indicate on their face that there is at least the possibility that they represent personal or capital expenditures, and therefore are not deductible under section 23(a)(1)(A). Since the allowances which we would make for miscellaneous expenses (and then only on the basis of the Cohan doctrine) would be no greater than those allowed by respondent, we find no error in his determination in these respects. See Rogers v. Commissioner, 248 Fed. (2d) 452 (C.A. 7, 1957), affirming T.C. Memo. 1956-171 [15 TCM 890,]; Bodoglau v. Commissioner, 230 Fed. (2d) 336 (C.A. 7, 1956), affirming 22 T.C. 912 sub nom. Michael Potson. II. Additions to Tax Section 291(a) Additions. *161 Respondent determined that George and Steinhoff were liable for additions to tax under section 291(a) on the grounds that the income tax returns of George for 1949 and 1951, and of Steinhoff for 1949, were not filed within the time prescribed by law, and that neither of the above named filed any return for 1950. With respect to the income tax returns for Ebner for 1949 and 1951, and that of Steinhoff for 1949, returns were required to be filed under section 53(a) by March 15 of the respective succeeding years, unless an extension of time had been granted. As to self-employment return, see discussion infra. Each of the income tax returns above referred to were filed in April of the respective succeeding years. It is clear, therefore, that in the absence of extensions, they were not filed within the time prescribed by law. The burden of proof rests with petitioners. The only affirmative testimony relating to an extension applied to the year 1950 (to be discussed infra) and there is no evidence that extensions were requested or granted for 1949 or 1951. The accountant's vague reference to his general practice of requesting extensions does not supply the missing proof. There remains *162 only the established fact that the returns were filed after the March 15th filing dates, and the presumptive correctness of respondent's determination. This requires us to hold that petitioners have failed to prove that the returns in question were timely filed. Likewise, there is no evidence that the failure to file on time was due to reasonable cause. That the fault may have been that of the accountant as agent of the petitioners does not relieve the latter from the imposition of the additions to tax under section 291(a). See Estate of Charles Curie, 4 T.C. 1175; Berlin v. Commissioner, 59 Fed. (2d) 996 (C.A. 2, 1932), affirming a Memorandum Opinion of this Court dated May 22, 1931, certiorari denied 287 U.S. 642. The additions will be applied in amounts to be determined under Rule 50. Respondent determined that neither Ebner nor Steinhoff filed a return for 1950, and, as a consequence, did not file timely returns. He introduced evidence to the effect that the district director's records failed to show filing of either the individual returns or a partnership return for that year. Petitioners' accountant testified that he had requested extensions of time for filing of said returns *163 until April 15, 1951, "as far as I can remember", and that he mailed the returns on the latter date. He produced a copy of a return for Ebner for 1950, made out in witness's handwriting, purporting to show that the original had been signed by Ebner and his wife and that witness had appended his certificate of preparation. The copy showed the date April 15, 1951. The witness had kept no record of filing returns. He was unable to produce any written evidence of extensions of time, and stated that his records had been left with another accountant, who had succeeded to his business, and that the successor had misplaced the records in transferring his business activities from office to home. An analysis of the accountant's testimony convinces us that he had no independent recollection of asking for an extension or of filing the returns. His statements are in substance merely a rationalization to the effect that it was his custom to mail returns at the end of the day on which they were completed and executed, and that it was his practice to ask for extensions when he could not complete the returns by the ordinary due date. There is no evidence of compliance with the condition in Regulations *164 111, section 29.53-4 which reads, in part, as follows: "Sec. 29.53-4. Due Date of Return. - The due date is the date on or before which a return is required to be filed in accordance with the provisions of the Internal Revenue Code, * * * or the last day of the period covered by an extension of time granted by the Commissioner or a collector. * * * If placed in the mails, the returns should be posted in ample time to reach the collector's office, under ordinary handling of the mails, on or before the date on which the return is required to be filed. If a return is made and placed in the mails in due course, properly addressed and postage paid, in ample time to reach the office of the collector on or before the due date, no penalty will attach should the return not actually be received by such officer until subsequent to that date. * * *" We recognize the fact (admitted by respondent's witness, who was Assistant Chief of the Returns Processing Branch of the Internal Revenue Service in the area in question) that returns can be, and, on occasion, have been lost. We think it extremely unlikely, however, that three related returns, each with different names of taxpayers, would not only *165 have been lost by the officials charged with the custody of such returns but also would have escaped recordation. In the light of the inconclusive nature and speculative character of the testimony offered on behalf of petitioners, who bear the burden of proof, and the records produced on behalf of respondent, we conclude that respondent's determinations in this respect must be sustained. Again there is no evidence that the failure to file on time (or to file at all) was due to reasonable cause. Additions to tax under section 291(a) are, therefore, to be applied in relation to the year 1950 in amounts to be determined under Rule 50. In addition, Ebner, for the year 1951, failed to file a self-employment tax return as required by section 482.[7]The burden of proof is on the petitioner to show that the failure to file the required return within the time prescribed by law was due to reasonable cause and not due to wilful neglect. The only evidence offered was the following statement by Ebner: "I had been told at that time I wasn't eligible for it due to the nature of my business." There is nothing to show that Ebner, in reliance upon competent advice of an individual qualified to assist *166 on tax matters, came to the conclusion that the self-employment tax return was not required because of his particular occupation, or for any other reason. In the absence of such evidence, "mistaken belief on the part of petitioner that no return was required under the statute does not constitute reasonable cause for noncompliance." See Beck Chemical Equipment Corporation, 27 T.C. 840 (1957), and cases cited therein. Here, again, additions to tax under section 291(a) are to be applied. Section 293(a) Additions. Respondent also determined that petitioners are subject to the 5 per centum addition to tax under section 293(a) for negligence in understating their taxable income for each of the years involved herein, and intentionally *167 disregarding rules and regulations of the Commissioner relating to the proper maintenance of books and records. Section 54(a); Regulations 111, 29.54-1. Except with respect to the year 1950, as to both Ebner and Steinhoff, and Ebner's self-employment tax for 1951 (to be discussed infra), we think it affirmatively apparent from our Findings of Fact, the nature of respondent's disallowances, and our own holdings, that the deficiencies were not due to negligence, or intentional disregard of rules and regulations. We think that in these respects extended discussion is unnecessary. With respect to the year 1950, as to both Ebner and Steinhoff, and with respect to Ebner's self-employment tax for 1951, we must take a different view. The burden is on the petitioners to prove that the deficiencies were due neither to negligence nor to intentional disregard of rules and regulations. This burden they have failed to meet. As indicated supra in discussing section 291(a) additions, we are faced with a record from which we have concluded that there is no satisfactory proof of the filing of a return by either petitioner for 1950; that there is record evidence that such returns were not filed; and *168 that it is conceded that no return of self-employment taxes were filed by Ebner for 1951. Failure to file, under the circumstances before us, obviously constituted a disregarding of rules and regulations and the evidence does not establish that such disregard of rules and regulations was not intentional. In these respects, therefore, additions to tax under section 293(a) are to be applied in amounts to be determined under Rule 50 on the basis of the deficiencies to be determined under such rule. Section 294(d)(1)(A) Additions. Respondent determined that Ebner and his wife, for 1948; Ebner for 1949, 1950, and 1951; and Steinhoff for 1949 and 1950, were liable for additions to tax under section 294(d)(1)(A) on the grounds that they failed to file timely declarations of estimated tax and to make timely periodic payments of estimated taxes as required under sections 58(a) and (d) and 59(a). The burden of proof rests with petitioners. We think it would serve no useful purpose to review the details of such part of the evidence as relates to this issue, since it is set forth in our Findings of Fact. Suffice it to say that such evidence, as far as it goes, sustains respondent's determination, *169 and there is nothing to meet petitioners' burden of establishing error. In view of the allowances which we have made in relation to the determination of petitioners' net income, the amount of the section 294(d)(1)(A) additions will be determined under Rule 50. Section 294(d)(2) Additions. Respondent also determined additions to tax under section 294(d)(2) for substantial underestimate of estimated taxes with respect to the same petitioners and for the same respective taxable years as those discussed in relation to section 294(d)(1)(A). Subject to appropriate recomputation under Rule 50, we sustain respondent on the basis of the same reasons as those discussed supra in relation to section 294(d)(1)(A). Decisions will be entered under Rule 50. Footnotes
*. The figures indicated by asterisks aggregate a different amount than the total claimed by petitioners and stipulated by the parties. Paragraph 8 of the Stipulation reads $671.25 for 1949 and $547 for 1950.
1. The following schedule is not a complete listing of all items as reflected on the books and records of petitioners, such as electric bulbs, wax, Western Union charges and towels.
*. The aggregate amount (Grand Total) reflected on petitioners' Exhibits 12 and 14, i.e., $4,392.21 for 1949 and $2,214.93 for 1950, differ from the totals set forth in paragraphs 9 and 10, of the Stipulation which show, respectively, $4,444.07 and $2,222.87. ↩
*. Joint Estimate - George and Myrtle Ebner. ↩
**. Deferred credit from 1949 in amount of $509.33 also allowed.↩
2. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or business expenses. - (A) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *. 3. Wis. Stat., Chapter 348↩ (1949). Offenses against public policy.
4. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(o) Charitable and Other Contributions. - In the case of an individual, contributions or gifts payment of which is made within the taxable year to or for the use of: * * *
(2) A corporation, trust, or community chest, fund, or foundation, created or organized in the United States or in any possession thereof or under the law of the United States or of any State or Territory or of any possession of the United States, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation. * * *↩
5. SEC. 23. * * *
(o) Charitable and Other Contributions. - In the case of an individual, contributions or gifts payment of which is made within the taxable year to or for the use of: * * *
(4) Posts or organizations of war veterans, or auxiliary units or societies of any such posts or organizations, if such posts, organizations, units, or societies are organized in the United States or any of its possessions, and if no part of their net earnings inures to the benefit of any private shareholder or individual;↩
6. Sec. 29.23(e)-3. Loss of Useful Value. - When, through some change in business conditions, the usefulness in the business of some or all of the capital assets is suddenly terminated, so that the taxpayer discontinues the business or discards such assets permanently from use in such business, he may claim as a loss for the year in which he takes such action the difference between the basis (adjusted as provided in section 113(b)↩ and sections 29.113(a)(14)-1 and 29.113(b)(1)-1 to 29.113(b)(3)-2, inclusive) and the salvage value of the property. * * *
7. SEC. 482. MISCELLANEOUS PROVISIONS. (a) Returns. - Every individual (other than a nonresident alien individual) having net earnings from self-employment of $400 or more for the taxable year shall make a return containing such information for the purpose of carrying out the provisions of this subchapter as the Commissioner, with the approval of the Secretary, may by regulations prescribe. Such return shall be considered a return required under section 51(a)↩. * * *